MARK SCHERZER, ESQ. (MS-2622)
Law Office of Mark Scherzer
Attorney for Plaintiff
49 Nassau Street, Fourth Floor
New York, New York 10038
Tel: (212) 406-9606
Email:  markscherzerlaw@verizon.net


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREGORY MAYER,                                    :

                    Plaintiff,               :          18 CV 2789 (VB)

    -against-                                      :

                                   :

RINGLER ASSOCIATES INC. AND AFFILIATES
LONG TERM DISABILITY PLAN                   :
and HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,                            :

Defendants.                                             :
------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SUMMARY JUDGMENT MOTION (TO BE TREATED AS A FRCP 52 MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD)


Of Counsel:
    ▪Mark Scherzer, Esq.
    ▪A. Christopher Wieber, Esq.

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. i

**TABLE OF AUTHORITIES** ..................................................................................... iii

**PRELIMINARY STATEMENT** .................................................................................. 1

**STATEMENT OF FACTS** ............................................................................................ 2

**STANDARD OF REVIEW** ........................................................................................... 3

  **I.**    **MR. MAYER IS ENTITLED TO THE COURT'S *DE NOVO* DETERMINATION OF THE BENEFIT AMOUNT TO WHICH HE IS ENTITLED** ...................................... 3

  **II.**    **RULE 52(a)(1) STANDARDS GOVERN THE PARTIES' CROSS-MOTIONS** .... 8

**ARGUMENT** .................................................................................................................. 9

  **I.**    **ON DE NOVO REVIEW, MR. MAYER IS ENTITLED TO BENEFITS BASED ON HIS TOTAL COMPENSATION FROM RAI-SCARSDALE AND TO BE DETERMINED A CONTRIBUTORY PLAN PARTICIPANT** ......................................... 9

    **A.**    **Mr. Mayer's Monthly Rate of Basic Earnings Should Include All Earnings from RAI-Scarsdale** ...................................................................................... 10

    **B.**    **Mr. Mayer's Monthly Rate of Basic Earnings Should Include His SEP-IRA Contributions** ...................................................................................................... 11

    **C.**    **Mr. Mayer Should be Recognized as a Contributory Participant in the Plan** .... 12

  **II.**    **EVEN ON DEFERENTIAL REVIEW, HARTFORD'S DETERMINATIONS WERE ARBITRARY AND CAPRICIOUS** ........................................................................ 13

    **A.**    **The Court Must Consider Hartford's Demonstrated Conflict of Interest** ......... 13

    **B.**    **Hartford's Determination of Mr. Mayer's Monthly Rate of Basic Earnings was Arbitrary and Capricious** ...................................................................................... 18

    **C.**    **Hartford Unreasonably Concluded that Mr. Mayer's Participant Status was Non-Contributory** .................................................................................................. 22

  **III.**    **THE COURT SHOULD AWARD MR. MAYER HIS CORRECT BENEFIT, AWARD INTEREST, AND GRANT HIS REQUEST FOR ATTORNEYS' FEES** ........ 24

**CONCLUSION** ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

- Aitken v. Aetna Life Ins. Co., 2018 U.S. Dist. LEXIS 164008, 2018 WL 4608217 (S.D.N.Y. Sept. 25, 2018).................................................................................. 7, 16
- Alfano v. CIGNA Life Ins. Co., 2009 U.S. Dist. LEXIS 28118, 2009 WL 890626 (S.D.N.Y., Apr. 2. 2009)................................................................................... 25
- Am. Fed'n of Musicians and Employers' Pension Fund v. Atl. Recording Corp., 203 F. Supp. 3d 301 (S.D.N.Y. 2016)................................................................. 10
- Arnone v. Aetna Life Ins. Co., 860 F.3d 97 (2d Cir. 2016)................................. 4
- Barnes v. American Int'l. Life Assur. Co., 681 F. Supp. 2d 513 (S.D.N.Y. 2010) ........ 4, 5
- Campbell v. Hartford Life & Accident Ins. Co., 2018 U.S. Dist. LEXIS 176627, 2018 WL 4963118 (S.D. Fla. Oct. 15, 2018)............................................................ 5
- Cherene v. First Am. Fin. Corp. Long-Term Disability Plan, 303 F. Supp. 2d 1030, 1037 (N.D. Cal. 2004)........................................................................................ 17
- Collins v. Liberty Life Assur. Co., 988 F. Supp. 2d 1105 (C.D. Cal. 2013) .............. 17, 22
- Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001) ......................... 9
- Davis v. Hartford Life & Accident Ins. Co., 2012 U.S. Dist. LEXIS 61142, 2012 WL 1565646 (D.S.C. May 2, 2012)......................................................................... 16
- Donachie v. Liberty Life Assur. Co., 745 F.3d 41 (2d Cir. 2014).......................... 25
- Fairbaugh v. Life Ins. Co. of N. Am., 737 F. Supp. 2d 68 (2d Cir. 2010)................. 25
- Fay v. Oxford Health Plan, 287 F.3d 96 (2d Cir. 2002) ...................................... 10
- Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)................................. 3
- Gaither v. Aetna Life Ins. Co., 394 F.3d 792 (10th Cir. 2004)............................. 15
- Gallo v. Madera, 136 F.3d 326 (2d Cir. 1998) ................................... 10, 19, 24
- Glenn v. MetLife, 461 F.3d 660 (6th Cir. 2006), *affd.*, 554 U.S. 105 (2008)............... 17
- Halo v. Yale Health Plan, 819 F.3d 42 (2d Cir. 2016) ...................................... 3, 6
- Halpin v. W.W. Grainger, Inc., 962 F.2d 685 (7th Cir. 1992)................................ 23
- Hodges v. Life Ins. Co. of N. Am., 920 F.3d 669 (10th Cir. 2019)......................... 20, 21
- Holmstrom v. Metro. Life Ins. Co., 615 F.3d 758 (7th Cir. 2010) .......................... 25
- Hughes v. Hartford Life & Accident Ins. Co., 368 F. Supp. 3d 386 (D. Conn. 2019) ....... 8
- In re Long Island Lighting Company, 129 F.3d. 268 (2d Cir. 1997)........................... 8
- Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243 (2d Cir. 1999)................ 9
- Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004) ........................ 9
- MacMillan v. Provident Mut. Life Ins. Co., 32 F. Supp. 2d 600 (W.D.N.Y. 1999)... 20, 21
- Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98 (2d Cir. 1991) .................... 9
- McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161 (6th Cir. 2003)................. 14
- McDonnell v. First Unum Life Ins. Co., 2013 U.S. Dist. LEXIS 110361, 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2015) ...................................................................... 9
- Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)................................... 14, 15
- Miles v. Principal Life Ins. Co., 720 F.3d 472 (2d Cir. 2013)............................... 14
- Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)................................. 14
- Mokbel-Aljahmi v. United Omaha Life Ins. Co., 706 Fed. Appx. 854 (6th Cir. 2017) ... 16
- Muller v. First Unum Life Ins. Co., 341 F.3d 119 (2d Cir. 2003) ........................... 9
- O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55 (2d Cir. 1994) ................................................................................................... 9

- <u>Okuno v. Reliance Std. Life Ins. Co.</u>, 836 F.3d 600 (6th Cir. 2016) ................................ 22
- <u>Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan</u>, 856 F.3d 686 (9th Cir. 2017) ................................................................................................................ 3, 5
- <u>Paese v. Hartford Life & Acc. Ins. Co.</u>, 449 F.3d 435 (2d Cir. 2006) ................................ 9
- <u>Pfenning v. Liberty Life Assur. Co.</u>, 158 F. Supp. 3d 1027 (S.D. Ohio 2017) ................. 6
- <u>Post v. Hartford Ins. Co.</u>, 2008 U.S. Dist. LEXIS 76916, 2008 WL 4444240 (E.D. Pa. Oct. 2, 2008) ................................................................................................................ 18
- <u>Ricciardi v. Metro. Life Ins. Co.</u>, 2019 U.S. Dist. LEXIS 25240, 2019 WL 652883 (S.D.N.Y. Feb. 15, 2019) ............................................................................... 19, 20, 21
- <u>Schewitz v. Aetna Life Ins. Co.</u>, 2019 U.S. Dist. LEXIS 85157, 2019 WL 2189263 (N.D. Ill. May 21, 2019) ............................................................................................. 13, 20, 21
- <u>Schuman v. Aetna Life Ins. Co.</u>, 2017 U.S. Dist. LEXIS 39388, 2017 WL 1053853 (D. Conn. Mar. 20, 2017) .................................................................................................. 7, 16
- <u>Sharkey v. Ultramar Energy</u>, 70 F.3d 226 (2d Cir. 1995) .......................................... 3, 5
- <u>Stephan v. Unum Life Ins. Co. of Am.</u>, 697 F.3d 917 (9th Cir. 2012) .............................. 8
- <u>Thoma v. Fox Long Term Disability Plan</u>, 2018 U.S. Dist. LEXIS 209077, 2018 WL 6514757 (S.D.N.Y. Dec. 11, 2108) ............................................................................. 7, 16
- <u>Wilkinson v. Sun Life & Health Ins. Co.</u>, 127 F. Supp. 3d 545 (W.D.N.C. 2015) .......... 22
- <u>Wolfe v. J.C. Penney Co.</u>, 710 F.2d 388 (7th Cir. 1983) .............................................. 23
- <u>Yancy v. United of Omaha Life Ins. Co.</u>, 2015 U.S. Dist. LEXIS 172233, 2015 WL 9311729  (C.D. Cal. Dec. 18, 2015) ......................................................................... 17
- <u>Zervos v. Verizon N.Y.</u>, 277 F.3d 635 (2d Cir. 2002) ............................................. 19, 24
- <u>Zuckerbrod v. Phoenix Mut. Life Ins. Co.</u>, 78 F.3d 46 (2d Cir. 1996) ..................... 14, 24

**Statutes**
- California Insurance Code § 10110.6 .......................................................................... 3, 5

**Rules**
- F.R.C.P. Rule 52 .......................................................................................................... 8

**Regulations**
- 29 C.F.R. § 2560.503-1(h)(2)(iv) ................................................................................... 6
- 29 C.F.R. § 2560.503-1(i)(3) ......................................................................................... 7
- 29 C.F.R. §2560.503-1 .................................................................................................. 3

## PRELIMINARY STATEMENT

Prior to becoming disabled by a series of back surgeries in 2015, plaintiff Gregory Mayer was a structured settlement consultant generating hundreds of thousands of dollars annually in commissions selling annuities. He was the sole owner and employee of Ringler Associates – Scarsdale, Inc. ("RAI-Scarsdale"), an affiliate company of a nationwide California-based brokerage firm Ringler Associates, Inc. ("RAI"). Like RAI's other independent contractors, RAI-Scarsdale paid RAI a portion of commissions earned for use of RAI's name and administrative services. When Mr. Mayer became disabled, he reasonably expected to receive two-thirds of his income as a benefit under the long-term disability plan (the "LTD Plan") of "Ringler Associates Incorporated and Affiliates." To Mr. Mayer's dismay, he encountered repeated obstruction, delay, bias, and ultimately underpayment by defendant Hartford Life & Accident Insurance Company ("Hartford"), the LTD Plan's insurer.

At first, Hartford denied Mr. Mayer's claim entirely. It gave no consideration whatsoever to a treating physician's report received before its final decision was made, nor did it provide that report to its retained medical consultant. It failed to credit Mr. Mayer's corrections to a statement of his occupational duties, even after RAI, which Hartford treated as "the employer," instructed Hartford to take the corrections into account. In its denial letter, Hartford recited an incorrect disability definition that implied a limited duration of his claim. It refused to produce appropriately requested information. By its wrongful denial, Hartford deprived Mr. Mayer and his family of income for well over a year after he filed his claim, necessitating his payment of legal fees to pursue an appeal.

Although Mr. Mayer prevailed on appeal, Hartford delayed payment because it failed to resolve Mr. Mayer's benefit amount – an issue, plainly presented by Mr. Mayer throughout his

claim and appeal.  Two months later, Hartford elected not to use the total compensation Mr.

Mayer received from RAI-Scarsdale in calculating his benefit.  Instead, Hartford treated RAI as

his "employer" and calculated his benefit solely on the portion of his RAI-Scarsdale income that

was administered and paid – at Mr. Mayer's direction – from RAI's payroll system.  Hartford's

calculation has no basis in the LTD Plan.  The LTD Plan identifies RAI "***and Affiliates***" as the

Policyholder and Employer and provides that benefits are calculated based on pre-disability

earnings received from the Employer.  Hartford should have used all compensation paid by Mr.

Mayer's actual employer, RAI-Scarsdale, to calculate his LTD Plan benefit.

The LTD Plan identifies "Ringler Associates Incorporated and Affiliates" as the Plan

Administrator, giving equal status to the various insured entities.  Nevertheless, Hartford

consistently credited the "say so" of RAI (and an unreliable broker), and discredited the evidence

from Mr. Mayer's actual employer RAI-Scarsdale, as to:  job description; W-2 information

(crediting a W-2 issued through RAI's payroll system over RAI-Scarsdale's' corrected form);

and contributory status in the LTD Plan, *i.e.*, whether premiums were paid wholly by Mr. Mayer

or his employer (refusing to acknowledge uncontroverted evidence that RAI reduced

commissions to RAI-Scarsdale to pay premium, and that RAI-Scarsdale charged those payments

to Mr. Mayer as income on which he paid tax).  Even when RAI directed Hartford to Mr. Mayer

for information, such as for the amount of his SEP-IRA contribution (which RAI identified as

part of the employer's pension plan), Hartford largely discounted that information.

Due to Hartford's biased decision-making, delays, and procedural violations, this Court

should apply *de novo* review and award Mr. Mayer benefits that accord with his actual income.

### STATEMENT OF FACTS

Plaintiff respectfully refers the Court to his Proposed Findings of Fact and Conclusions of

Law ("PFF"), dated May 31, 2019, for the findings which plaintiff submits the Court should make based on the Administrative Record ("AR") and other documents which the parties have stipulated to be part of the trial record ("ADD").

## STANDARD OF REVIEW

**I.    MR. MAYER IS ENTITLED TO THE COURT'S *DE NOVO* DETERMINATION OF THE BENEFIT AMOUNT TO WHICH HE IS ENTITLED.**

In an action brought under 29 U.S.C. § 1132(a)(1)(B), a denial of benefits is reviewed *de novo* unless the plan confers, and the claim administrator is entitled to, a deferential review standard.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Hartford "bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it."  Sharkey v. Ultramar Energy, 70 F.3d 226, 230 (2d Cir. 1995).

Mr. Mayer is entitled to *de novo* review here because (1) California's "no discretion" insurance law is enforceable in a policy governed by California law, Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, 856 F.3d 686, 695 (9th Cir. 2017) (California Insurance Code § 10110.6 requires *de novo* review despite discretionary clause in plan), and (2) Hartford's wholesale violations of ERISA's full and fair review procedures trigger *de novo* review under Halo v. Yale Health Plan, 819 F.3d 42, 57-58 (2d Cir. 2016) ("[P]lan's failure to comply with the [DOL's] claims-procedure regulation, 29 C.F.R. §2560.503-1, will result in that claim being reviewed *de novo* in federal court"; "[T]he plan 'bears the burden of proof on this issue'").

California Insurance Code §10110.6 provides:

   (a) If a policy … offered, issued, delivered, or renewed, whether or not in California, that provides or funds … disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer … to determine eligibility for benefits or coverage, to interpret the terms of the policy, …, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

There can be no question that the LTD Plan covers California residents, as RAI's headquarters are identified as being in California, the Group Policy and its Booklet-Certificates were delivered to California, several RAI employees in this case are identified as being located in California, and the Group Policy, LTD Booklet-Certificates, and claim determination letters all include notices specifically required for California residents.  (PFF5, 164-69.)

Hartford drafted the LTD Plan to include a provision that chooses California law. (PFF164-65 [Group LTD Policy:  "This policy is governed by the laws of the state where it is delivered"; "Place of Delivery:  California"].)  Choice of law provisions are generally enforced in ERISA benefit plans.  *E.g.*, Arnone v. Aetna Life Ins. Co., 860 F.3d 97, 108 (2d Cir. 2016) ("Contractual choice of law provisions are generally enforceable under both New York law and federal common law"); Barnes v. American Int'l. Life Assur. Co., 681 F. Supp. 2d 513, 520 (S.D.N.Y. 2010) ("In ERISA cases in which an insurance contract contained a choice of law provision dictating that state law would govern, courts have held that the choice of law provision controls, unless it would be unreasonable and unfair to apply state law") (collecting cases). Judge Chin, in Barnes, held that a New York choice-of-law provision was enforceable in a claim under an Accidental Death and Disability Plan even though "Barnes lived and worked in Texas and his wife's death occurred in Texas" because "his employer was headquartered in New York and the Policy was issued and delivered in New York"; "the Policy was issued under an employee benefits plan covering many employees, and it would be reasonable, to achieve uniformity and consistency, to apply the law of the state in which the Policy was issued and delivered"; and, "as AIG issued the Policy, it would not be unreasonable to hold AIG to language that it drafted."  All these factors weigh in favor of enforcing the LTD Plan's California choice of law provision here.

Hartford will surely argue that a New York resident cannot invoke the protections of California law.  It made a similar argument in <u>Campbell v. Hartford Life & Accident Ins. Co.</u>, 2018 U.S. Dist. LEXIS 176627, *19 FN8, 2018 WL 4963118 (S.D. Fla. Oct. 15, 2018).  However, Hartford designated Florida as the "place of delivery" in <u>Campbell</u>, but here chose California.  Moreover, §10110.6's plain language unambiguously covers "a policy, contract, certificate, or agreement … that provides or funds … disability insurance coverage for any California resident…"  The statute applies to insurance policies that cover California residents, not California residents who are covered by insurance policies.  The question is not whether Mr. Mayer is a California resident, but whether the LTD Plan "provides disability coverage for any California resident."  If it does, the statute "is self-executing" so that "the parties to the policy … and the courts shall treat that provision as void and unenforceable.'"  Cal. Ins. Code §10110.6(g). *See also*, <u>Orzechowski</u>, 856 F.3d at 692 (acknowledging statute's "self-executing" nature).

There is no bar, constitutional or otherwise, to California law dictating a uniform standard of review for the LTD Plan, when the policy through which it is implemented was delivered in California, chooses California law, and insures California business offices and personnel.  For Hartford to meet its burden to establish all predicate facts supporting its claimed entitlement to deferential review, per <u>Sharkey</u>, it would have to adduce evidence that it provided no coverage under the LTD Plan to California residents.  It has proffered no such proof.  Consequently, the LTD Plan is subject to Cal. Ins. Code §10110.6(g).

Enforcing choice of law provisions promotes uniformity and consistency.  <u>Barnes</u>, *supra*.  The LTD Plan should not operate differently because of where the particular RAI or RAI Affiliate employee-plan participant resides.  Another insurer, after persuading a district court in Ohio to apply deferential review to an Ohio resident under a disability plan that chose California

law and covered California residents, stipulated before the Sixth Circuit that *de novo* review

should have been applied.  <u>Pfenning v. Liberty Life Assur. Co.</u>, 158 F. Supp. 3d 1027, 1029

(S.D. Ohio 2017).  On remand, the district court awarded attorneys' fees and observed that:

> Liberty Life advocated for a standard of review that was different from the one mandated by California law (and the insurance policy) and compounded the problem by adopting inconsistent positions for persons who are beneficiaries under the same plan. In order for ERISA to achieve its statutory promise of efficiency, predictability and uniformity, claim administrators like Liberty Life must consider the effect of the actions it takes.

158 F. Supp. 3d at 1031.

*De novo* review is also compelled here because Hartford – as in <u>Halo</u> – violated ERISA's

full-and-fair-review regulations in the course of its benefit calculation determination:

- **Refusing to Consider Mr. Mayer's Evidence and Arguments:**  ERISA requires

  Hartford to provide a review that "takes into account all comments, documents, records,

  and other information submitted by the claimant."  29 C.F.R. § 2560.503-1(h)(2)(iv).

  Nonetheless, Hartford (both in its initial claim and appeal reviews), ignored several of

  Mr. Mayer's principal arguments (and the associated evidence).  In its initial denial,

  Hartford gave no consideration whatsoever to an important treating doctor's examination

  report and discredited Mr. Mayer's corrected occupational duties statement even though

  endorsed by RAI.  (PFF76, 81-83, 64(a), 68(c), 73, 86.)  In its initial and appeal-level

  benefit computation decisions, Hartford ignored that Mr. Mayer was wholly employed by

  Affiliate RAI-Scarsdale (not RAI).  (PFF10, 11, 42, 43, 65, 68, 69, 108, 113, 115, 118,

  121(c), 125, 134(c)(i), 140(a)-(d), 146(b), 158(c)-(e), 158(k)-(l).)  It therefore refused to

  consider Mr. Mayer's corrected W-2 forms, which his accountants determined should

  have included amounts previously reported separately on 1099s with the original W-2

  amount.  (*Id.;* PFF115(b), 121, 158(k)-(l).)  This was critical to understanding Mr.

Mayer's compensation.  Instead of investigating and resolving the discrepancy between the two W-2's, Hartford repeatedly and robotically asserted that RAI was the employer whose word governed.  (*Id.*)  Hartford's refusal to consider evidence and comments submitted by Mr. Mayer necessitates *de novo* review by the Court.  Thoma v. Fox Long Term Disability Plan, 2018 U.S. Dist. LEXIS 209077, *83-84, 2018 WL 6514757 (S.D.N.Y. Dec. 11, 2108); Aitken v. Aetna Life Ins. Co., 2018 U.S. Dist. LEXIS 164008, at *38-43, 2018 WL 4608217 (S.D.N.Y. Sept. 25, 2018); Schuman v. Aetna Life Ins. Co., 2017 U.S. Dist. LEXIS 39388, at *39-42, 2017 WL 1053853 (D. Conn. Mar. 20, 2017).

- **Missed Deadlines and Inadequate Notifications:**  ERISA required Hartford to decide Mr. Mayer's appeal within 45 days, extendable to 90 days, but only if Hartford gave Mr. Mayer written notification within the initial 45-day period of "special circumstances" justifying the extension.  29 C.F.R. § 2560.503-1(i)(3) (incorporating the substantive requirements of section (i)(1)).  On the appeal at issue here, however, Hartford notified Mr. Mayer after the expiration of 50 days that it intended to extend its time to render a decision and cited no special circumstances, whatsoever.  (PFF148.)  Although its internal notations cited circumstances purportedly justifying the delay, these were not "special," nor is there any evidence documenting that the circumstances actually existed. (*Id.*)  Ultimately, Hartford rendered a decision that was 37 days late.  (PFF154, 158.) There was no identified reason for this lateness, as the last documented activity in Hartford's claim file (other than letters from Mr. Mayer's attorney protesting the delay), was an internal email exchange that ended on October 18, 2017 – 22 days earlier. (PFF155-57.)  These procedural violations also compel *de novo* review.  Aitken, 2018 U.S. Dist. LEXIS 164008, at *31-38.

7

- **Failure to Provide Requested Documentation:** Counsel for Mr. Mayer repeatedly requested that Hartford provide – prior to its final decision – any information developed in Hartford's investigation of Mr. Mayer's employment, plan enrollments, sources of compensation, etc. (PFF149, 151.) Although Appeal Specialist Solem developed additional information – principally from communications between an underwriter and broker for the plan (PFF143.), and with Hartford's Practices/Strategy Department (PFF146-47.) – none of this information was provided to Mr. Mayer or his attorney prior to the appeal determination.[1] This constitutes a further procedural violation, requiring the Court's exercise of *de novo* review. <u>Hughes v. Hartford Life & Accident Ins. Co.</u>, 368 F. Supp. 3d 386, 392-403 (D. Conn. 2019) (failure to provide medical report, developed during appeal and requested by claimant prior to appeal determination, violates ERISA procedural requirements and compels *de novo* review).

Nor are these the only procedural errors and evidence of bias and mishandling of Mr. Mayer's claim. Additional examples are cited in the section addressing Hartford's conflict of interest.

## II.    RULE 52(a)(1) STANDARDS GOVERN THE PARTIES' CROSS-MOTIONS.

Where, as here, the parties have agreed to motions for judgment on the administrative record, pursuant to F.R.C.P. Rule 52, "the decision on the motion … can best be understood as

---

[1] Hartford has also withheld communications with its internal legal department during Mr. Mayer's administrative appeal, improperly asserting that such communications are "privileged." (PFF155.) As pointed out in Mr. Scherzer's document requests (PFF93, 130, 159.), privilege cannot be asserted against a plan participant under these circumstances. <u>In re Long Island Lighting Company</u>, 129 F.3d 268, at 271-272 (2d Cir. 1997) ("ERISA fiduciary must make available to the beneficiary ... any communications with an attorney that are intended to assist in the administration of the plan" and "cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed ...."); <u>Stephan v. Unum Life Ins. Co. of Am.</u>, 697 F.3d 917, 931-33 (9th Cir. 2012) (The fiduciary exception extends through the final administrative appeal").

essentially a bench trial 'on the papers' with the District Court acting as the finder of fact."

Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003). Such a bench trial

pursuant to Rule 52 requires the district court "'to find the facts specially and state separately its

conclusions of law thereon,' as well as 'judge the credibility of the witnesses.'" Connors v.

Conn. Gen. Life Ins. Co., 272 F.3d 127, 135 (2d Cir. 2001) (citing Rule 52).

## ARGUMENT

I.    **ON *DE NOVO* REVIEW, MR. MAYER IS ENTITLED TO BENEFITS BASED ON HIS TOTAL COMPENSATION FROM RAI-SCARSDALE AND TO BE DETERMINED A CONTRIBUTORY PLAN PARTICIPANT.**

On *de novo review*, the Court does not defer to Hartford's evaluation of the evidence.

Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288, 296 (2d Cir. 2004). Mr. Mayer bears the

burden of proof to demonstrate his entitlement to LTD Plan benefits by a preponderance of the

evidence. Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006). *De novo*

review "applies to all aspects of the denial of an ERISA claim, including fact issues…." Kinstler

v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999). In other words,

"[T]he Court … interprets the terms of the benefits plan, … and reaches its own conclusion

about whether the plaintiff has shown … that she is entitled to benefits under the plan."

McDonnell v. First Unum Life Ins. Co., 2013 U.S. Dist. LEXIS 110361, *38, 2013 WL 3975941

(S.D.N.Y. Aug. 5, 2015). When interpreting the LTD Plan on *de novo* review, the Court

employs traditional federal common law rules of construction, including *contra proferentem*:

> Where there are ambiguities in an ERISA plan that this Court is reviewing *de novo*, those ambiguities are construed in favor of the plan beneficiary. Masella [v. Blue Cross & Blue Shield of Conn., 936 F.2d [98] at 107 [(2d Cir. 1991)]. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55, 59 (2d Cir. 1994). "Whether contract language is ambiguous is a question of law that is resolved by reference to the contract alone." Id. at 58-59.

Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002) (internal quotation marks omitted).

A.    **Mr. Mayer's Monthly Rate of Basic Earnings Should Include All Earnings from RAI-Scarsdale.**

Mr. Mayer is disabled as defined by the Plan.  Hartford has made that determination, and the Social Security Administration has awarded him benefits under its more stringent disability standard.  (PFF57.)  The Court must resolve the amount of Mr. Mayer's benefit based on his "Monthly Rate of Basic Earnings," *i.e.*, Mr. Mayer's "average monthly rate of pay, including Bonuses and Commissions, from the Employer for the 2 calendar year(s) ending just prior to the date [he] bec[a]me Disabled."  (PFF25-26.)  The LTD Plan identifies both the "Employer" and "Plan Administrator" as "Ringler Associates Incorporated ***and Affiliates***."  (PFF17, emphasis supplied.)  RAI-Scarsdale was an RAI Affiliate and Mr. Mayer's sole employer.  (Affiliate: PFF37, 70, 128; Sole Employer:  PFF10, 11, 42, 43.)  RAI-Scarsdale is clearly included as a "Policyholder" and "Employer" by use of the phrase "and Affiliates."  By treating RAI as the sole Employer with authoritative information, Hartford rendered the inclusion of "Affiliates" as insured parties and administrators meaningless, violating of one of the cardinal rules of contract and ERISA plan interpretation.  Gallo v. Madera, 136 F.3d 326, 330-31 (2d Cir. 1998) ("[W]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious"); Am. Fed'n of Musicians and Employers' Pension Fund v. Atl. Recording Corp., 203 F. Supp. 3d 301, 310 (S.D.N.Y. 2016) ("'[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible'").

All Mr. Mayer's income was paid by RAI-Scarsdale (under its own tax ID number) whether distributed as draw through RAI's payroll system or paid directly by RAI-Scarsdale. (PFF11.)  Although Hartford initially asserted it could only consider compensation paid under RAI's tax ID (PFF108(b), 134(c).), it implicitly abandoned that defense when it recognized Mr. Mayer as a plan participant and computed benefits based on his Affiliate RAI-Scarsdale pay (albeit, only that portion administered through RAI's payroll system).  (PFF42, 119, 121(c), 158(k)-(l).).  Thus, the LTD Plan clearly dictates (and Hartford has implicitly determined) that Mr. Mayer's compensation from RAI-Scarsdale must be included in his Monthly Rate of Basic Earnings.  Hartford has offered no reasoned basis for accepting the 2013 and 2014 W-2's issued by RAI in RAI-Scarsdale's name, but excluding the corrected W-2s issued by RAI-Scarsdale. The latter establish that Mr. Mayer's 2013-2014 RAI-Scarsdale compensation was $151,842.01 and $399,614.01, respectively.  (PFF47, 48, 109(b).)  Thus, Mr. Mayer's Monthly Rate of Basic Earnings, without consideration of retirement contribution adjustments, was $22,977.33, *i.e.,* ($151,842.01 + $399,614.01)/24 = **$22,977.33**.

**B.    Mr. Mayer's Monthly Rate of Basic Earnings Should Include His SEP-IRA Contributions.**

The definition of Monthly Rate of Basic Earnings also includes "contributions you make through a salary reduction agreement with the Employer to: an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement; an executive non qualified deferred compensation arrangement; or a salary reduction arrangement under an IRC Section 125 plan." (PFF25, 26.)  Again, the term Employer must be interpreted to include RAI-Scarsdale, and Mr. Mayer has submitted undisputed evidence that RAI-Scarsdale paid to a deferred compensation arrangement, *i.e.*, a SEP-IRA to which he contributed $50,000 in both 2013 and 2014.  (PFF49, 50, 62, 68(b), 140(e), 156(d), 158(j).)  "Non-qualified deferred compensation

11

arrangement" is not a defined term, the list of arrangements is not exclusive, and the purpose of the provision, to include deferred compensation through IRS-recognized retirement vehicles, would be served by including his SEP-IRA contributions in income.  Indeed, RAI's own statement to Hartford at the inception of the claim identified Mr. Mayer as participating in a pension plan, the vehicle of which was "other – individual account."  (PFF60.)  RAI-Scarsdale's contributions to Mr. Mayer's SEP-IRA should be included in his Monthly Rate of Basic Earnings, resulting in an additional $4,166.66 in monthly earnings, or **$27,143.99**.

      **C.**    **Mr. Mayer Should be Recognized as a Contributory Participant in the Plan.**

LTD Booklet-Certificate 1.32 (Class 2), which Hartford first provided to Mr. Mayer as a relevant plan document under which his benefits were decided (PFF92.), covers participants who contribute to the cost of their premiums:  "All Active Full-time Producers … who are choosing to pay their premium."  (PFF20(a).)  LTD Booklet-Certificate 4.5 (Class 1), which Hartford later produced during the benefit amount appeal, covers participants who are "producers … not paying their premium."  (PFF20(c).) Even if Hartford were permitted to switch certificates midstream, LTD Booklet-Certificate 4.5 states that "[t]he Employer … may allocate part of the cost to the employee."  (PFF22.)  Neither Hartford nor RAI kept any records associated with Mr. Mayer's enrollment in either Class.  (PFF21, 142, 147, 151, 158(e).)  Meanwhile, the only actual evidence establishes that RAI charged premium payments for Mr. Mayer to RAI-Scarsdale, and that RAI-Scarsdale in turn allocated all of the premium cost to Mr. Mayer as income, hence paid post-tax. (PFF44, 51, 99(f), 117(b), 117(d), 118, 139(d)-(e), 156(a), 158(h)-(i).)

Hartford determined that Mr. Mayer was a non-contributory enrollee in the LTD Plan based solely on the representations of a single RAI employee, Operations Manager Ferrari, and the broker who sold the policy.  The broker's say-so was incredible on its face.  He claimed no

independent memory of the enrollment, but asserted that there must have been an election form

(now lost) in which Mr. Mayer opted for non-contributory coverage.  (PFF143.) However, the

LTD Plan itself says that a participant is "enrolled automatically by the Employer," implying that

no further enrollment action is required of the participant.  (PFF28.)  Moreover, the broker's

story of a lost enrollment form was premised on the erroneous assumption that Mr. Mayer joined

the Plan at a time of paper recordkeeping, 20 years earlier.  (PFF 143.)  All parties agree he first

became a plan participant in 2007 (only 8 years pre disability).  (PFF 144.)  The broker also

incorrectly identified Mr. Mayer as owning an Affiliate called "RAI Manhattan." (PFF 144)

Meanwhile, Ms. Ferrari based her statement on the inaccurate understanding that RAI paid the

premiums for Mr. Mayer's coverage, and acknowledged in doing so her incomplete information

regarding the running of RAI-Scarsdale.  (PFF64(a).  *See* discussion *infra* at p. 22-23.)  Hartford

cannot reasonably base its decision on such slim reeds.  Schewitz v. Aetna Life Ins. Co., 2019

U.S. Dist. LEXIS 85157, *14-15, 2019 WL 2189263 (N.D. Ill. May 21, 2019) (rejecting Aetna's

argument that its pre-disability earnings "figure is correct merely because [employer]

NorthShore said so")

Whether enrolled in Class 1 or Class 2, the facts establish that Mr. Mayer was a

contributory participant:  RAI collected premium payments from RAI-Scarsdale, which in turn

included the premiums in Mr. Mayer's W-2 compensation. He bore the post-tax cost of those

premium payments.  Without enrollment records, which RAI and Hartford clearly bore the

burden to maintain, the Court should base its determination on the parties' actual conduct.

## II.    EVEN ON DEFERENTIAL REVIEW, HARTFORD'S DETERMINATIONS WERE ARBITRARY AND CAPRICIOUS.

### A.    The Court Must Consider Hartford's Demonstrated Conflict of Interest.

If the Court were to deem deferential review applicable, Hartford's decision must be

overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miles v. Principal Life Ins. Co., 720 F.3d 472, 487 (2d Cir. 2013). Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached" and "requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). The Court must determine whether Hartford's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996). The arbitrary and capricious standard "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172-173 (6th Cir. 2003).

The Court must also weigh Hartford's financial self-interest along with procedural and substantive defects in its decision-making. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, at 112, 117-19 (2008) (a conflict of interest exists where "a plan administrator both evaluates claims for benefits and pays benefits claims"; "The conflict … should prove more important – perhaps of great importance – where circumstances suggest a higher likelihood that it affected the benefits decision…."). There is ample evidence here that Hartford (1) was motivated by financial self-interest; (2) engaged in aggressive tactics and violated ERISA procedural regulations throughout the entirety of Mr. Mayer's claim; and (3) interpreted LTD Plan provisions in derogation of their plain meaning and employed circuitous reasoning and sometimes gross misrepresentation to reach its pre-determined conclusions regarding Mr. Mayer's Monthly Rate of Basic Earnings and his Contributory status in the LTD Plan.

Hartford personnel clearly understood that acknowledging Mr. Mayer's total claimed compensation would have negative financial implications: "[T]here is a significant difference in

the benefit if we use the adjusted W2." (PFF109(d).)  They tried to limit the information

considered in evaluating the claim.  When Mr. Mayer asked RAI Operations Manager Ferrari to

clarify that RAI-Scarsdale was his employer (not RAI), Hartford instructed Ms. Ferrari to remain

silent: "You have provided the information we have asked for and no additional information is

needed at this time." (PFF126, 128.)  Hartford tried to use RAI-Scarsdale's accountant's letter to

prove his premiums were paid by "the company," but it did so by cherry-picking the sentences

from that letter which appeared to support the conclusion, while pointedly ignoring the sentence

which reported that the premiums paid were included in his W-2 income. (PFF158(i).)  In sum,

having elicited the information it wished for its desired outcome, Hartford abjured all other

information.  By willfully closing of its eyes to relevant information, Hartford revealed its self-

motivated decision-making.  Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 804, 807-08 (10th Cir.

2004) (An "ERISA fiduciary presented with a claim that a little more evidence may prove valid

should seek to get to the truth of the matter").

"ERISA imposes higher-than-marketplace quality standards on insurers," requires "that

the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in

the interests of the participants and beneficiaries' of the plan," and "underscores the particular

importance of accurate claims processing by insisting that administrators 'provide a full and fair

review ….'" Glenn, 554 U.S. at 115.  Hartford clearly violated these standards:

- Hartford initially denied Mr. Mayer's claim on May 13, 2016, because "you are able
  to perform all of the physical demands of Your Occupation," but  in so doing  it
  completely ignored and failed to provide its consultant with a detailed evaluation
  report by Dr. Leonard Harrison, which was submitted by Mr. Mayer two weeks
  earlier, on April 26, 2016.  (PFF76, 81-83, 86.)  Glenn, 554 U.S. at 118 (where

"MetLife ... had failed to provide its independent vocational and medical experts with all of the relevant evidence," this constituted a "serious concern" and supported the district court's decision "to set aside MetLife's discretionary decision"). Hartford also ignored RAI's endorsement of Mr. Mayer's occupational duty report, finding the two discrepant. (PFF64(a).) Mokbel-Aljahmi v. United Omaha Life Ins. Co., 706 Fed. Appx. 854, 865 (6th Cir. 2017) ("A record review that does not include all relevant records is unreliable and 'clearly inadequate'").

- Similarly, at the appeal level of the initial denial of Mr. Mayer's claim, he submitted a detailed Vocational Evaluation Report (the Pasternak Report), but Hartford's appeal-level Rehabilitation Case Manager affirmed all prior vocational/occupational findings without any review or consideration of the Pasternak Report and its critique of those earlier findings. (PFF99(c), 103.) Thoma, 2018 U.S. Dist. LEXIS 209077, *83-84 (failure to consider claimant's vocational evaluation submission constitutes a procedural violation); Aitken, 2018 U.S. Dist. LEXIS 164008, *38-43 (same); Schuman, 2017 U.S. Dist. LEXIS 39388, *16 (D. Conn. Mar. 20, 2017) (same);

- Hartford engaged in willfully inaccurate cherry-picking, quoting a letter from Mr. Mayer's accountant to prove that the "company" paid the premiums for Mr. Mayer's coverage, but leaving out the operative sentence that "the premium payments were added to Mr. Mayer's W-2 as a taxable fringe benefit to him" and at the same time falsely implying that the "company" was RAI (when the letter clearly speaks only of RAI-Scarsdale. (PFF158(i).) Davis v. Hartford Life & Accident Ins. Co., 2012 U.S. Dist. LEXIS 61142, *24-26, 2012 WL 1565646 (D.S.C. May 2, 2012) ("Hartford abused its discretion by using only the parts of the record that were most beneficial to

its position, even when those sections misrepresented the facts it cited to in the record, and despite the majority of the record indicating otherwise").

- Hartford misstated plan provisions in formal decision letters, and also provided inconsistent versions of the applicable plan documents.  (PFF88, 92, 95, 97, 134, 161.)

- In the Benefit Calculation and Contributory Participation appeals, Hartford violated ERISA's appeal-level notification and decision deadline procedures – all while providing false information about the reasons for its delays.   (*Supra*, p. 7.)

- As it did with regard to the determination of his medical disability, Hartford ignored evidence and argument submitted by Mr. Mayer in support of his Benefit Calculation and Contributory Participation appeals.  (*Supra*, pp. 6-7.)  Glenn v. MetLife, 461 F.3d 660, 672 (6th Cir. 2006) ("[T]he failure to consider evidence that is offered after an initial denial of benefits renders a final denial of benefits arbitrary and capricious"), *affd.*, 554 U.S. 105 (2008).

- Hartford withheld relevant documents requested by Mr. Mayer.  (*Supra*, pp. 8.) Yancy v. United of Omaha Life Ins. Co., 2015 U.S. Dist. LEXIS 172233, *59-60, 2015 WL 9311729 (C.D. Cal. Dec. 18, 2015) (denying requested opportunity to respond to consultant's report is "suspicious" and "weigh[ed] in favor of finding that Defendant abused its discretion"); Collins v. Liberty Life Assur. Co., 988 F. Supp. 2d 1105, 1127 (C.D. Cal. 2013) ("[R]efus[al] to disclose the medical reviews … before the final appeal determination" is a failure to "provide meaningful dialogue"); Cherene v. First Am. Fin. Corp. Long-Term Disability Plan, 303 F. Supp. 2d 1030 (N.D. Cal. 2004) (Failure to provide information is "evidence of an actual conflict").

- Hartford personnel engaged in aggressive and pretextual use of surveillance. (PFF123, 124.) <u>Post v. Hartford Ins. Co.</u>, 2008 U.S. Dist. LEXIS 76916, 2008 WL 4444240 (E.D. Pa. Oct. 2, 2008) ("Hartford's aggressive tactics [including "fruitless surveillance] … are yet another factor … which supports our conclusion that Hartford's termination of benefits was arbitrary and capricious….").

In addition, Hartford engaged in sharp tactics to reach the particular conclusions at issue in this lawsuit, as described in more detail below.  These tactics demonstrate both that Hartford's conflict of interest affected its decision, and that its decision-making was arbitrary and capricious.  Hartford acted in a result-oriented and financially self-serving manner, and, therefore, its decision-making is entitled to considerably reduced deference.

      **B.**    **Hartford's Determination of Mr. Mayer's Monthly Rate of Basic Earnings was Arbitrary and Capricious.**

Hartford ultimately determined that the LTD Plan's Monthly Rate of Basic Earnings included RAI-Scarsdale bi-weekly draw amounts and one bonus distributed by the RAI payroll system to Mr. Mayer at RAI Scarsdale's direction, but excluded RAI-Scarsdale compensation distributed directly by RAI-Scarsdale to Mr. Mayer.  Hartford acted arbitrarily and capriciously in that it (i) interpreted Monthly Rate of Basic Earnings in a manner that abrogated the plain meaning of that provision; (ii) accepted facts reported by RAI as binding (even despite conflicting evidence in the record and Hartford's duty to independently assess the facts), and (iii) failed to reconcile manifest inconsistencies in its handling of Mr. Mayer's claim.

The LTD Plan identifies the Employer and Plan Administrator as "Ringler Associates Incorporated ***and Affiliates***."  (PFF17, emphasis supplied.)  Therefore, the "Monthly Rate of Basic Earnings," *i.e.*, the "average monthly rate of pay, including Bonuses and Commissions, from the Employer" (PFF26.), must be deemed to include pay received from any of the Affiliates

which happen to be the employer of the claimant in question.  Thus, the LTD Plan plainly covers

Mr. Mayer's pay from RAI-Scarsdale (which is conceded to be an Affiliate of RAI).  (*Supra*,

Point I.A.)  To get around this straightforward interpretation of the LTD Plan, Hartford personnel

consistently interpreted and applied the terms to mean RAI only, crediting information from RAI

but not RAI-Scarsdale and considering only RAI -executed payments.  (PFF115, 120, 121, 146,

147, 158.)  Excluding "Affiliates" from consideration, despite the plan's plain language, is

arbitrary.  Conversely, Hartford's interpretation may be viewed as inserting a requirement that a

plan participant's pay must be paid by RAI in order to be counted in the Monthly Rate of Basic

Earnings.  Whether viewed as ignoring actual plan language, or as inserting new/additional

requirements, Hartford's interpretation of the Plan is arbitrary and unreasonable.  Gallo, 136 F.3d

at 330 (ignoring plan terms is arbitrary and capricious); Zervos v. Verizon N.Y., 277 F.3d 635,

647 (2d Cir. 2002) (Denial of coverage arbitrary and capricious where health plan "in effect

added additional language to the policy" because it "required that a treatment be superior to

another existing treatment in order to avoid exclusion … while the language itself requires only

that the treatment be effective – not more effective than alternatives").

Hartford determined Mr. Mayer's Monthly Rate of Basic Earnings by soliciting and

relying on W-2s supplied by RAI, while refusing to even consider the W-2s provided by RAI-

Scarsdale.  (PFF59, 61, 64(c), 115(b).)  Hartford took RAI's assertions as final, regardless of

conflicting evidence submitted by Mr. Mayer.  Such blind reliance on an employer's factual

assertions is arbitrary and capricious, as several courts have recently held.  In Ricciardi v. Metro.

Life Ins. Co., 2019 U.S. Dist. LEXIS 25240, 2019 WL 652883 (S.D.N.Y. Feb. 15, 2019),

Morgan Stanley, Mr. Ricciardi's employer, advised MetLife that his annual pre-disability

earnings were $34,527.20.  On appeal, Mr. Ricciardi supplied W-2's showing income closer to

$200,000. Nonetheless, Morgan Stanley continued to "confirm" that Mr. Ricciardi's pre-disability earnings were $34,527.20 and, on that basis, MetLife upheld its decision. Judge McMahon concluded that this determination was arbitrary and capricious because, *inter alia*, "MetLife never performed its own calculation of the [pre-disability earnings]," but "simply relied on what Morgan Stanley told it – a number that seems on its face ridiculously low, and wildly at variance with Ricciardi's W-2 income…" *Id.* at *26-32.

Hodges v. Life Ins. Co. of N. Am., 920 F.3d 669 (10th Cir. 2019) held similarly. Although decided *de novo*, Hodges is nonetheless significant for giving primacy to actual facts over an employer's pronouncements regarding its employee's participant class. The claimant was a cryotherapy technician, but was expected to market additional company products and services when visiting customer locations to perform requested cryotherapy services. He received incentive pay and claimed to be in Class 2 (Sales) where incentive pay was recognized as part of his compensation base. Based on the employer's assertion that such incentive pay was not included in the premium computation, the insurer upheld the Class 1 categorization, effectively lowering Mr. Hodge's pay base significantly. The Hodges court rejected the employer's classification and instead based its determination on the plain provisions of the plan applied to the actual facts of the claimant's employment, which demonstrated that "Hodges's job 'involved selling' Endo's products" and "that a reasonable person in Hodges's position would have believed himself to be a salesperson." *Id.* at 680-82.

The district courts in Schewitz, *supra*, and in MacMillan v. Provident Mut. Life Ins. Co., 32 F. Supp. 2d 600, 607-608 (W.D.N.Y. 1999), similarly rejected insurance carrier reliance on just the employers' representations regarding the claimants' pre-disability earnings, which in both cases lowered the earnings figures and reduced the benefits, and instead held it was the

insurers' responsibility to determine the pre-disability income amount under the respective plans.

Under <u>Ricciardi</u>, <u>Hodges</u>, <u>Schewitz</u> and <u>MacMillan</u>, Hartford was obligated to make a full and independent review of the underlying facts. Indeed, it was explicitly empowered to do so by the LTD Plan: "Hartford Life may inspect any of the Policyholder's documents, books, or records which may affect the insurance or premiums of this policy" and "[i]f the Policyholder gives Hartford Life any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount." (PFF31, 32.) By relying on RAI's unsupported assertions, Hartford abandoned its own discretion and acted arbitrarily and capriciously.

The arbitrariness of Hartford's decision here is further illustrated by its failure to maintain any kind of internal consistency or coherence in its interpretation of plan terms. If Hartford wanted only to recognize payments made by RAI as the Employer, then it should have treated the commissions paid to RAI-Scarsdale for Mr. Mayer's services as the compensation base. As Mr. Mayer pointed out, if those commission payments were used, then the Monthly Rate of Basic Earnings should have been based on 2013 commission of $463,256.00 and 2014 commissions of $448,491.00 – significantly more than Mr. Mayer was claiming. (PFF41, 68.) Hartford also reversed course on its handling of W2's. In the first instance, it specifically requested these as part of the "Employer Section" of the initial Application for LTD Benefits (PFF61.) and then relied primarily on the W2's it obtained from RAI to make its initial determination of Mr. Mayer's Monthly Rate of Basic Earnings (PFF109, 111, 120.). However, after Mr. Mayer submitted corrected W2's – showing higher income – Hartford reversed course and determined that "There is no language in the policy to use W2's." (PFF121.)

In excluding RAI-Scarsdale's SEP-IRA contributions on behalf of Mr. Mayer from its benefit calculation, Hartford engaged in a similar change of course. Ability Analyst Martinez

initially refused to include the SEP-IRA contribution because "Ringler [RAI] doesn't show any

SEP in 2013 and 2014" (PFF117(c).), but later claimed that it could not count Mr. Mayer's SEP-

IRA contributions because a SEP-IRA was not one of the specifically identified retirement

vehicles in the list in the Monthly Rate of Basic Earnings definition (PFF158(j).).  Yet, there is

no indication the listed items were meant to be exhaustive, and, indeed, Ability Analyst

Martinez's initial inclination to count the SEP-IRA contributions, if reflected/affirmed by RAI,

suggests that Hartford would have counted the contributions if RAI had done so.  (PFF109(d),

117(c).)  RAI itself identified Mr. Mayer's individual account as the way he participated in the

pension plan.  (PFF60.)  Hartford's flip-flopping of positions is further evidence of arbitrary and

capricious decision-making.  Okuno v. Reliance Std. Life Ins. Co., 836 F.3d 600, 612 (6th Cir.

2016) ("[T]he shifting rationale … over the course of the appeals process further supports our

finding that Reliance arrived at its determinations arbitrarily and capriciously"); Wilkinson v.

Sun Life & Health Ins. Co., 127 F. Supp. 3d 545, 567 (W.D.N.C. 2015) (where "Sun Life

advanced multiple arguments in its effort to justify the discontinuation of Wilkinson's LTD

benefits" and relied on "three different theories suggests Sun Life's decision was driven by a

desired outcome"); Collins, 988 F. Supp. 2d at 1129-30 ("Liberty's shifting rationales provide

some evidence that it desired a certain result and summoned up various rationales to reach it";

"This type of self-interested decision-making contravenes the purpose of ERISA and is the

essence of an abuse of an insurance provider's discretion").

     C.     **Hartford Unreasonably Concluded that Mr. Mayer's Participant Status was Non-Contributory.**

     Hartford's determination that Mr. Mayer's participation in the LTD Plan was non-

contributory was based on (i) an arbitrarily steadfast adherence to RAI's "say-so" with regard to

Mr. Mayer's purported non-contributory enrollment – despite uncontroverted evidence that Mr.

Mayer was, in fact, contributing the entire cost of his premiums, and (ii) an unreasonable interpretation of the LTD Plan (regardless of Mr. Mayer's purported participation category).

Hartford, itself, had no record of Mr. Mayer's enrollment.  (PFF21, 142, 147, 151, 158(e).)  When it sought this information from RAI, Operations Manager Ferrari reported on the Employer's Section of the Application for LTD Benefits that the LTD benefit was "100% taxable," that RAI "contribute[d] towards the cost of the LTD premium … 100%," and, in response to the question "Does the employee contribute towards the cost of the LTD premium?," she answered "No."  (PFF60.)  Even after Mr. Mayer presented contrary evidence, *i.e.*, that RAI used RAI-Scarsdale money for the premiums and that RAI-Scarsdale allocated those premiums to Mr. Mayer as income, and RAI reported that it had no enrollment records or any other documentation of Mr. Mayer's election, Hartford still stuck to its position that Mr. Mayer was enrolled in the Class 1 non-contributory plan.  (PFF158.)  Hartford's determination that Mr. Mayer was enrolled in the non-contributory Class 1 was thus a bare conclusion shorn of its underlying evidentiary basis.  This sort of rationale violates ERISA because "[t]he 'reason' given for denial is not a reason but a conclusion."  Wolfe v. J.C. Penney Co., 710 F.2d 388, 392 (7th Cir. 1983). A reasoned explanation should include identification of the evidence considered by the administrator, and an "indication of the administrator's assessment of any of [that evidence] or of the weight given to them."  Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 694 (7th Cir. 1992).

Even if Hartford reasonably concluded that Mr. Mayer was enrolled in Class 1 of the LTD Plan, that should not have ended its inquiry regarding his contributory status.   Despite differences in Eligible Class descriptions for Class 1 (LTD Booklet-Certificate 4.5: "Employees who are producers … not paying their premium,") and Class 2 (LTD Booklet-Certificate 1.32:

23

"Producers … who are choosing to pay their premium."), Certificate 4.5 also permits the

Employer to re-assign the premiums to the employee: "The Employer pays the premium for the

insurance, but may allocate part of the cost to the employee." (PFF22.) Although Mr. Mayer

pointed Hartford to this language on several occasions, Hartford never acknowledged or

addressed it, but instead continued to insist – without citation to any particular plan language or

facts – that if Mr. Mayer was enrolled in Certificate 4.5, it was impossible for premiums to be

reallocated to him. (PFF147: "If an employer has a non-contributory benefit [Class 1], that's

just what it is"; PFF146 FN 4: "Employees do not have the option to pay premiums back to their

Employer and make a non-contributory benefit a contributory benefit.") By interpreting

Certificate 4.5 as absolutely and exclusively non-contributory in nature, arbitrarily negating the

Source of Contribution provision, Hartford has acted arbitrarily and capriciously. Gallo, 136

F.3d at 330-31.

### III.   THE COURT SHOULD AWARD MR. MAYER HIS CORRECT BENEFIT, AWARD INTEREST, AND GRANT HIS REQUEST FOR ATTORNEYS' FEES.

Awarding benefits is the appropriate remedy "where the difficulty is not that the

administrative record was incomplete, but that a denial of benefits based on the record was

unreasonable." Zuckerbrod, 78 F.3d at 51 n.4. Accord, Zervos, 277 F.3d at 648. The record here

is complete. Mr. Mayer submitted extensive financial and tax records, documenting the source

and nature of his earnings and premium contributions. Hartford has contacted RAI, the broker-

agency for the coverage, and Hartford's own underwriting department and obtained as much

information as appears to exist with regard to Mr. Mayer's enrollment in the LTD Plan. Hartford

relied on presumed facts (while ignoring the actual ones) and circular reasoning to reach its

preferred result. Remand would serve only to give Hartford yet another chance to review the

evidence it chose to overlook or ignore throughout the claim and appeal process. Holmstrom v.

24

Metro. Life Ins. Co., 615 F.3d 758, 779 (7th Cir. 2010) ("[W]e tend to award benefits when the record provides us with a firm grasp of the merits of the participant's claim").

"[A] court may, without further inquiry, award attorneys' fees to a plaintiff who has had 'some degree of success on the merits.'" Donachie v. Liberty Life Assur. Co., 745 F.3d 41, 46 (2d Cir. 2014). See also, Alfano v. CIGNA Life Ins. Co., 2009 U.S. Dist. LEXIS 28118, at *2-3, 2009 WL 890626 (S.D.N.Y., Apr. 2. 2009) (attorneys' fees awarded: "CIGNA may not have acted outrageously," but "there was no sound basis for CIGNA's termination of … benefits"). Finally, "the need to fully compensate Plaintiff, a consideration of the equities, and the remedial purpose of ERISA … all favor awarding prejudgment interest." Fairbaugh v. Life Ins. Co. of N. Am., 737 F. Supp. 2d 68, 89 (2d Cir. 2010).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests judgment overturning Hartford's calculation of Mr. Mayer's benefit, ordering Hartford to pay long term disability benefits based on the full income paid to him under RAI-Scarsdale's amended W-2 plus the amount of his SEP_IRA contributions; finding that premium payments were paid by him on a post-tax contributory basis, and awarding plaintiff his reasonable attorneys' fees and costs.

Dated:      New York, New York
            May 31, 2019

                          Respectfully submitted,

                          _____
                          MARK SCHERZER, ESQ. (MS-2622)
                          Law Office of Mark Scherzer
*Of Counsel:*             Attorney for Plaintiff
*Mark Scherzer, Esq.*     49 Nassau Street, Fourth Floor
*A. Christopher Wieber, Esq.*  New York, New York 10038
                          Tel: (212) 406-9606
                          Email:  markscherzerlaw@verizon.net