**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x
                                                                     :
GREGORY MAYER,                                                       :
                                                                     :
                                   Plaintiff,                        :     Case No. 7:18-cv-02789-VB
                                                                     :
                     -against-                                       :
                                                                     :
RINGLER ASSOCIATES INC. AND AFFILIATES                               :
LONG TERM DISABILITY PLAN and HARTFORD                               :
LIFE AND ACCIDENT INSURANCE COMPANY,                                 :
                                                                     :
                                   Defendants.                       :
                                                                     :
------------------------------------------------------------------- x


### DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF


ROBINSON & COLE LLP
Attorneys for Defendant
1055 Washington Boulevard
Stamford, CT 06901
(203) 462-7500

# Table of Contents

**Page**

Table of Authorities .................................................................................................... ii

Preliminary Statement .................................................................................................. 1

Argument ...................................................................................................................... 2

     I.     The Court should apply the deferential standard of review .................................. 2

          A.     California law does not bar discretionary review in this action ................. 2

          B.     Hartford Life complied with claim procedures ........................................... 5

          C.     A violation of claim procedures does not compel de novo review .......... 12

          D.     The purported conflict should have no weight, and does not change the outcome ............................................................................................... 13

     II.     Plaintiff's assertion that the entity he controls has the authority to set his earnings for disability purposes is unfounded and incorrect ............................... 17

     III.     Plaintiff's other attacks on the administrative review are without merit ............. 20

          A.     Hartford Life did not ignore Plaintiff's submissions regarding his earnings ..................................................................................................... 20

          B.     Hartford Life did not change its rationale ................................................. 23

Conclusion .................................................................................................................. 24

**Cases**

*Billinger v. Bell Atl.*,
    240 F. Supp. 2d 274 (S.D.N.Y. 2003), *aff'd* 124 Fed. Appx. 669 (2d Cir.
    2005), *cert. denied*, 546 U.S. 843 (2005)..............................................................16

*Brosted v. Unum Life Ins. Co. of Am.*,
    349 F. Supp. 2d 1088 (N.D. Ill. 2004), *aff'd*, 421 F.3d 459 (7th Cir. 2005) ...........14

*Campbell v. Hartford Life & Accident Ins. Co.*,
    2018 WL 4963118 (S.D. Fla. Oct. 15, 2018).......................................................3, 5

*Cooper v. Life Ins. Co. of N. Am.*,
    No. 1:05-CV-111, 2011 WL 826190 (E.D. Tenn. Mar. 2, 2011) ............................14

*Durakovic v. Building Service 32 BJ Pension Fund*,
    609 F.3d 133 (2d Cir. 2010)...................................................................................14

*Glazer v. Reliance Std. Life Ins. Co.*,
    524 F.3d 1241 (11th Cir. 2008) .............................................................................8, 9

*Hafford v. Aetna Life Ins. Co.*,
    2017 WL 4083580 (S.D.N.Y. Sept. 13, 2017)..........................................................7

*Halo v. Yale Health Plan*,
    819 F.3d 42 (2d Cir. 2016)................................................................................12, 13

*Hancock v. Aetna Life Ins. Co.*,
    251 F. Supp. 3d 1363 (W.D. Wash. 2017)................................................................7

*Hines v. First Unum Life Ins. Co.*,
    2016 U.S. Dist. LEXIS 37766 (S.D.N.Y. Mar. 23, 2016) ..................................16, 17

*Hobson v. Metro. Life Ins. Co.*,
    574 F.3d 75 (2d Cir. 2009).....................................................................................14

*Hodges v. Life Ins. Co. of N. Am.*,
    920 F.3d 669 (10th Cir. 2019) ...............................................................................22

*Hughes v. Hartford Life & Acc. Ins. Co.*,
    368 F. Supp. 3d 386 (D. Conn. 2019)............................................................9, 10, 12

*Ingravallo v. Hartford Life Ins. Co.*,
    563 Fed. Appx. 796, 800 (2d Cir. Apr. 24, 2014)...................................................16

*LeBlanc v. Sullivan Tire Co.*,
526 F. Supp. 2d 75 (D. Me. 2007) ..........................................................................14

*MacMillan v. Provident Mut. Life Ins. Co. of Philadelphia*,
32 F. Supp. 2d 600 (W.D.N.Y. 1999) ....................................................................22

*Metro. Life Ins. Co. v. Glenn*,
554 U.S. 105, 128 S. Ct. 2343 (2008) ........................................................13, 14, 16

*Metzger v. UNUM Life Ins. Co. of Am.*,
476 F.3d 1161 (10th Cir. 2007) ........................................................................8, 9, 12

*Midgett v. Washington Group Int'l LTD Plan*,
2009 WL 8186025 (8th Cir. June 3, 2009) ...........................................................8, 9

*Orzechowski v. Boeing Co. Non-Union LTD Plan, Plan No. 625*,
856 F.3d 686 (9th Cir. 2017) .................................................................................4, 5

*Pfenning v. Liberty Life Assurance Co.*,
No. 3:14-CV-471, 2015 WL 9460578 (S.D. Ohio Dec. 28, 2015), *vacated and
remanded by agreement*, 16-3068 (6th Cir. Aug. 2, 2016) ....................................3, 5

*Ricciardi v. Metro. Life Ins. Co.*,
No. 16-CV-3805(CM), 2019 WL 652883 (S.D.N.Y. Feb. 15, 2019) ......................22

*Rotondi v. Hartford Life & Accident Grp.*,
2010 U.S. Dist. LEXIS 99502 (S.D.N.Y. Sep. 22, 2010) .......................................16

*Schewitz v. Aetna Life Ins. Co.*,
No. 18-CV-6119, 2019 WL 2189263 (N.D. Ill. May 21, 2019) .............................22

*Schrom v. Guardian Life Ins. Co. of Am.*,
2013 U.S. Dist. LEXIS 38039 (S.D.N.Y. Mar. 19, 2013) ......................................17

*Tedesco v. I.B.E.W. Local 1249 Ins. Fund*,
674 F. App'x 6 (2d Cir. 2016) ...............................................................................13

*Wilson v. Aetna Life Ins. Co.*,
2016 U.S. Dist. LEXIS 135396 (N.D.N.Y. Sep. 30, 2016) ....................................13

**Table of Authorities**
**(continued)**

**Page(s)**

**Statutes**

15 U.S.C. § 1012(b) .................................................................................................3

29 U.S.C. § 1133(2) .................................................................................................9

**Other Authorities**

29 C.F.R. § 2560.503-1 .....................................................5, 6, 7, 8, 9, 10, 11, 12, 13

65 Fed. Reg. 70,246 .................................................................................................5

65 Fed. Reg. 70,252 ...............................................................................................11

81 Fed. Reg. 92316 .............................................................................................5, 8

Cal. Ins. Code § 10110.6(a) .............................................................................2, 3, 4

50 Ill. Admin. Code § 2001.3 ..................................................................................3

28 Tex. Admin Code § 3.1203 .................................................................................3

Mich. Admin. Code R 500.2202 ..............................................................................3

Defendants, Hartford Life and Accident Insurance Company ("Hartford Life"), and the Group Long Term Disability Plan for Employees of Ringler Associates Incorporated and Affiliates (the "Plan" and collectively with Hartford Life, "Defendants"), submit this opposition memorandum in connection with the bench trial of this action.

## Preliminary Statement

The parties have filed simultaneous opening trial briefs (Doc. 27: "Opening Brief" or "Def. Br.;" and Doc. 31: "Plaintiff's Brief" or "Pl. Br."). Defendants set forth in their Opening Brief a detailed statement of facts pertaining to its determination on Plaintiff's claim, as well as the applicable law. Defendants incorporate that Brief, and will not repeat that discussion here.[1]

The Court should review Hartford Life's decision under the arbitrary and capricious standard, because, contrary to Plaintiff's arguments, California law does not preclude the grant of discretion in this case, and because Hartford complied with applicable claim regulations. In addition, Hartford Life's purported conflict of interest should have no weight in the analysis. *See* Point I, *infra.*

Regardless of the standard of review, Plaintiff's theory of the case cannot be reconciled with the facts, the law, or common sense. Plaintiff contends he gets to decide, post-disability, the earnings from which his disability benefits are calculated, because Ringler Scarsdale is a "Policyholder" and an "Employer," and because he controls Ringler Scarsdale. But the evidence, buttressed by several concessions in Plaintiff's Brief and Proposed Findings of Fact and Conclusions of Law (Doc. 30; "PFF"), shows that Ringler Scarsdale did not act as Plaintiff's "Employer" in the administration of the Plan, and did not engage with Hartford Life as Employer

---

[1] Unless defined otherwise, all capitalized terms used in this Response shall have the same meaning as defined terms in Hartford Life's Opening Brief.

or Policyholder in *any* meaningful respect. Instead, Ringler Associates filled both roles at all relevant times by, among other things, managing enrollment, calculating and paying all premiums, and acting as intermediary between Plaintiff and Hartford Life regarding Plaintiff's claim. Plaintiff cannot reinvent history solely to obtain an increased benefit. *See* Point II, *infra*.

Plaintiff also asks this Court to make a series of findings tangential to Hartford Life's administration of his claim—particularly that Hartford Life refused to consider information he submitted in support of his claim, or that it changed its rationale in administering Plaintiff's claim. Plaintiff's arguments are meritless because they are inconsistent with the evidence of record and contradict Plaintiff's own admissions. *See* Point III, *infra*.

## Argument

## I.    The Court should apply the deferential standard of review

The Policy unambiguously grants Hartford Life discretionary authority to construe its terms and determine eligibility for benefits thereunder. AR31, 34; AR68, 71; AR105, 108. Plaintiff does not provide any legitimate basis to disregard that grant of discretion.

### A.    California law does not bar discretionary review in this action

There is no dispute that the Policy was delivered in California, and that California law applies. California law, however, does not bar discretionary clauses in all policies issued in California. Rather, California law precludes enforcement of discretionary clauses *against California residents*.

Cal. Ins. Code § 10110.6(a) makes "void and unenforceable" a discretionary provision contained in a policy "that provides... disability insurance coverage for any ***California resident***." (emphasis added). Plaintiff admits that he is *not* a California resident. Pl. PFF ¶ 1 (plaintiff "has at all relevant times been a resident of the State of New York."). Accordingly, this law, by its

plain terms, does not impact the language of the Plan as applied to Plaintiff. *See, e.g.*, *Campbell v. Hartford Life & Accident Ins. Co.*, 2018 WL 4963118, at *8 n.8 (S.D. Fla. Oct. 15, 2018) ("by its own express terms, the statute applies only to California residents"); *Pfenning v. Liberty Life Assurance Co.*, No. 3:14-CV-471, 2015 WL 9460578, at *8 (S.D. Ohio Dec. 28, 2015), *vacated and remanded by agreement*, 16-3068 (6th Cir. Aug. 2, 2016) ("Liberty further argues that this discretionary clause is valid because the California law only applies to California residents. The Court agrees."). Thus, California law does not benefit Plaintiff.

Plaintiff attempts to overcome Section 10110.6(a)'s unambiguous language by arguing that "[t]he statute applies to insurance policies that cover California residents, not California residents who are covered by insurance policies." Pl. Br. p. 5. Putting aside the fact that Plaintiff has not pointed to any evidence in the record that a single California resident is insured under the Policy, Plaintiff's interpretation is wrong. If the statute were to be interpreted the way Plaintiff contends it should be, it would represent an intolerable overreach by California into the authority of the rest of the states to regulate the business of insurance.

The McCarran-Ferguson Act reserves to each state the power to regulate insurance. 15 U.S.C. §1012(b). As part of this regulatory power, states typically require that insurance policies be filed and approved before they can be sold within their territory, and they impose requirements or restrictions on the contents of those policies. States that have wanted to ban or restrict the use of discretionary clauses, have tended to require that any policy issued in that state not contain a grant of discretion. *See, e.g.*, 50 Ill. Admin. Code §2001.3 (precluding discretionary clauses in a policy "offered or issued in this State"); 28 Tex. Admin Code § 3.1203 (prohibiting "[i]nclusion of a discretionary clause in any form" in policies required to be filed with the Texas Department of Insurance); Mich. Admin. Code R 500.2202 ("an insurer shall not issue, advertise,

or deliver to any person in this state a policy … that contains a discretionary clause"). Had California chosen to prohibit discretionary clauses in any policy issued in California, then Plaintiff could potentially assert that the Policy did not contain an enforceable discretionary clause. But that is not the case here. Plaintiff does not (and indeed, cannot) contend that New York has an enforceable ban on discretionary clauses for insurance policies that cover its residents.

California chose a different path – to preclude the use of the clause against a resident of the state, regardless of where the policy is issued. Thus, Section 10110.6(a) states that it applies regardless of where the "policy, contract, certificate or agreement, [is] offered, issued, delivered or renewed[.]" There is no basis to conclude that California intended to, or that it has the power to, determine the terms of insurance policies issued in other states, and that insure residents of other states. Plaintiff has not attempted to explain, he cannot legitimately justify, and no court has endorsed, such an all-encompassing expansion of California's regulatory power.

Plaintiff does not cite a single case in which any court has applied the California law to require *de novo* review in a claim brought by someone who is not a California resident. Plaintiff cites *Orzechowski v. Boeing Co. Non-Union LTD Plan, Plan No. 625,* 856 F.3d 686 (9th Cir. 2017), but the Plaintiff in *Orzechowski* was a California resident. *See* Complaint, *Orzechowski v. Boeing Co. Non-Union LTD Plan, Plan No. 625, et al.*, C.D. Cal. 8:12-cv-01905-CJC-JDE, Doc. 1, Nov. 11, 2012 at ¶ 6 ("Orzechowski … is a resident of the County of Los Angeles, California."). And *Orzechowski* merely holds that "*if any discretionary provision is covered by the statute*, 'the courts shall treat that provision as void and unenforceable.'" *Orzechowski*, 856 F.3d at 692 (emphasis added). In contrast, as noted above, two courts have held that the California law bans enforcement of discretionary clauses only against California residents.

4

*Campbell*, 2018 WL 4963118, at *8 n.8 ("by its own express terms, the statute applies only to California residents. Plaintiff claims to be a resident of Palm Beach County, Florida, not California. DE 1, ¶ 2. Accordingly, the holding in *Orzechowski* does not apply here. "); *Pfenning*, 2015 WL 9460578, at *8 ("Liberty further argues that this discretionary clause is valid because the California law only applies to California residents. The Court agrees.").

Because Plaintiff is not a California resident, the California statute at issue does not impact the discretionary language in the Plan to the extent it is applied to him.

### B. Hartford Life complied with claim procedures

Plaintiff next argues that Hartford Life failed to comply with various provisions in 29 C.F.R. § 2560.503–1 ("Section 503-1"), which requires a loss of deference. Plaintiff's arguments are meritless. It should be noted that Section 503-1 was substantially revised, but the revisions do not govern Plaintiff's claim as they only govern claims filed on or after April 1, 2018. 29 C.F.R. § 2560.503–1(p)(3); 81 Fed. Reg. 92316. Thus, the version of Section 503-1 applicable to Plaintiff's claim was issued in 2000. 65 Fed. Reg. 70,246.

Plaintiff first argues that Hartford was five days late in providing notification of special circumstances justifying an extension of time to decide his appeal under Section 503–1(i)(3). Pl. Br. p. 5. Plaintiff is incorrect. Hartford Life received Plaintiff's administrative appeal on July 13, 2017. AR146 (07/13/2017 "Mail Receipt" claim log entry notating "[r]cvd appeal from atty" at 3:43 p.m.); AR233 ("In your letter received on July 13, 2017, you appealed the calculation of your client's Monthly Benefit…"; AR234 ("In conjunction with your letter of appeal, you submitted a Personal Statement from Mr. Mayer dated July 13, 2017…"). Section 503-1(i)(3) requires an extension notice to be delivered within 45 days of receipt of the appeal. Forty-five

days from July 13, 2017 is August 27, 2017. Hartford Life provided its extension notice on August 24, 2017. AR239. Hartford Life's notification therefore was timely.

The basis of Plaintiff's contention that he commenced his appeal on July 5, 2017 appears to be that his attorney wrote a letter on that day stating that he believed the deadline to appeal was July 13, 2017, and that he intended to submit materials supporting an appeal on or before that deadline, but in the event the appeal deadline actually was earlier, he wanted "to confirm Mr. Mayer's request for review and the general grounds thereof[.]"AR630, 634. Plaintiff then submitted extensive materials in support of his appeal on July 13, 2017, AR529-591, and Hartford Life designated July 13, 2017 as the commencement of the appeal. Given that Plaintiff asserted on July 5 that the full set of appeal materials would be submitted on or before July 13, it was entirely reasonable for Hartford Life to conclude that Plaintiff's appeal was filed when that material actually was received on July 13, 2017. Section 503-1(i)(4) provides that the time to decide an appeal is tolled while waiting for the claimant to submit "information necessary to decide a claim[.]"

Thus, the Court should conclude that Hartford Life's time to determine the appeal (or give notice of an extension) did not start to run until July 13, 2017.

Plaintiff next argues that Hartford Life "cited no special circumstances, whatsoever" for the extension of the deadline to decide the appeal. Pl. Br. p. 5, PFF ¶ 148. That is false. Hartford Life's August 24, 2017 letter states: "We are unable to make a decision on your client's appeal during the initial 45 day period because we are still awaiting information from the Employer needed to fully investigate your client's claim." AR239. *See also* PFF ¶ 148. Plaintiff acknowledges that Hartford Life was "awaiting response from Broker/Employer regarding

election forms for CLMT, " PFF ¶ 148, but dismisses Hartford Life's need to obtain such response as "not 'special'".

Under Section 503-1, a "special circumstance" is something beyond the control of the claim administrator. *Hafford v. Aetna Life Ins. Co.*, 2017 WL 4083580, at *5 (S.D.N.Y. Sept. 13, 2017) ("the Department of Labor's preamble to Subsection 503-1(i)(1)(i)… states that 'special circumstances' refers to "reasons beyond the control of the plan"); *Hancock v. Aetna Life Ins. Co.*, 251 F. Supp. 3d 1363, 1373 (W.D. Wash. 2017) ("the DOL's preamble and regulations contemplate that a situation beyond the control of the plan constitutes a special circumstance that necessitates an extension."). The fact that Hartford Life needed to wait for Ringler Associates to respond to its request for information and/or documentation regarding Plaintiff's enrollment and earnings is beyond Hartford Life's control, and therefore constitutes a "special circumstance." *See Hafford*, 2017 WL 4083580, at *5; *Hancock*, 251 F. Supp. 3d at 1373. In fact, a critical reason Hartford Life needed additional time to obtain enrollment information from Ringler Associates was that neither Plaintiff nor Ringler Scarsdale provided it to Ringler Associates. Plaintiff acknowledges that this information was important to his claim. Pl. Br. 13 ("Without enrollment records, which RAI and Hartford clearly bore the duty to maintain, the Court should base its determination on the parties' actual conduct."). Plaintiff cannot claim that this material is important, but then argue that Hartford Life cannot have the time needed to obtain the material.[2]

Plaintiff next contends that he is entitled to *de novo* review because his counsel "repeatedly requested that Hartford provide – prior to its final decision – *any* information developed in

---

[2] Hartford Life had no obligation to maintain enrollment records. To the contrary, the Plan states that the Employer is responsible for completing and maintaining enrollment records, AR46, which is typical for a self-administered plan. If Ringler Scarsdale had acted at Plaintiff's Employer with respect to the Plan, the Ringler Scarsdale would have had Plaintiff's enrollment records.

Hartford's investigation of Mr. Mayer's employment, plan enrollments, sources of compensation, etc." Pl. Br., p. 8 (citing PFF ¶¶ 149, 151) (emphasis added). Plaintiff's contention is misplaced. He is not entitled to a continuous feed of "any information developed" by Hartford Life in connection with an administrative appeal prior to entry of a decision on that appeal.

The revision to Section 503-1 applicable to claims filed on or after April 1, 2018 – which is not applicable to Plaintiff's claim – requires enhanced disclosure of evidence and rationales developed on administrative appeal. *See, e.g.*, 29 C.F.R. § 2560.503-1(h)(4). But the Department of Labor cautioned that even that new procedure does not require the kind of constant disclosure of new information that Plaintiff erroneously contends the old regulation requires. 81 FR 92316, 92326 ("The provision does not require that the plan provide the claimant with information in a piecemeal fashion without knowing whether, and if so how, that information may affect the decision.").

The version of Section 503-1 applicable to Plaintiff's claim does *not* require a claim administrator to disclose to the claimant evidence that was generated or received as part of the administrative appeal before a decision on appeal. *Metzger v. UNUM Life Ins. Co. of Am.,* 476 F.3d 1161 (10th Cir. 2007), *Glazer v. Reliance Std. Life Ins. Co.,* 524 F.3d 1241 (11th Cir. 2008); *Midgett v. Washington Group Int'l LTD Plan,* 2009 WL 8186025 (8th Cir. June 3, 2009). Each of those decisions held that the plain text of Section 503-1(h)(2)(iii) (2000) did not require disclosure before a decision on administrative appeal is issued. *Metzger*, 476 F.3d at 1167 ("In light of the sum procedural requirements of 29 C.F.R. § 2560.503-1 and the Department's explanation of those regulations, we hold that subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level

reviewers prior to a final decision on appeal."); *Glazer,* 524 F.3d at 1245 ("Glazer's argument [that disclosure is required before a decision is made] is contrary to the plain text of the regulations."); *Midgett,* 561 F.3d at 896 ("The amendments to § 2560.503-1 enacted in 2000 … indicate that the full and fair review to which a claimant is entitled under 29 U.S.C. § 1133(2) does not include reviewing and rebutting, prior to a determination on appeal, the opinions of peer reviewers solicited on that same level of appeal.").

Plaintiff relies on a contrary holding in *Hughes v. Hartford Life & Acc. Ins. Co.*, 368 F. Supp. 3d 386 (D. Conn. 2019), but that decision is not binding on this Court and should not be followed here. In *Hughes*, the District of Connecticut rejected the clear appellate authority found in *Metzger*, *Glazer*, and *Midgett*, on the ground that the report of an independent medical examination conducted during administrative appeal was a "relevant" document that a claimant is entitled to review prior to a determination on administrative appeal.

Hartford Life maintains that *Hughes* erred by, among other things, misconstruing the meaning of the term "relevant" as used in Section 503-1(h)(2)(iii). *Hughes*, 368 F. Supp. 3d at 394–95 (opining that "relevant" information to which a claimant was entitled pending a decision on appeal was not limited to materials submitted, considered or generated in connection with the *initial* adverse determination). The Court's conclusion is contradicted by the text of the 2000 regulation, as interpreted by the Eighth, Tenth and Eleventh Circuits.

Section 503-1(h)(2)(iii) states:

> *(h) Appeal of adverse benefit determination.*
>
> *(2) Full and fair review.* … [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures- …

(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section; …

Section 503-1(h)(2)(iii) expressly incorporated (m)(8), which read in pertinent part: "A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information (i) Was relied upon in making the benefit determination; [or] (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination[.]"

Thus, by the express terms of the 2000 regulation a document becomes "relevant" to a particular benefit determination, and subject to disclosure on request, only *after* the particular benefit determination had been made. For example, (m)(8) could easily have stated that a "relevant" document is one that "*is* generated in the course of making a benefit determination," but it used the past tense *was*, and included a consideration of the role that the document did or did not play in "the benefit determination[.]" If the Department of Labor meant to allow claimants to demand at any time any documents that a plan had generated in connection with a claim, then it surely could have said so. However, as noted above, even in amending Section 503-1 as of 2018 to provide for additional disclosure on administrative appeal, the Department of Labor did not require the disclosure that *Hughes* held, and Plaintiff claims, is required.

Indeed, under the 2000 regulation, (h)(2)(iii) *must* be interpreted to include the claimant's right to obtain documents relevant to the *initial* adverse determination, because there was no other provision in the 2000 regulation that allowed the claimant to request those materials. In particular, subsections (a) through (g) did not give the claimant the right to demand production of

the materials that the plan relied on, considered, or generated in making the initial adverse determination. 65 Fed. Reg. 70,265-70,268. Because (h)(2)(iii) and (m)(8) must be read together to allow the claimant to demand disclosure of material relied on, submitted, considered, *etc.* in connection with the *initial* adverse determination, these provisions cannot also be interpreted to address materials "submitted, considered or generated" in connection with the as-yet unmade determination on review.

The DOL's preamble to the 2000 regulation confirms this interpretation of (h)(2)(iii), by explaining its rationale for proposing the requirement for the production of "relevant" documents:

> The proposal [that became the 2000 regulation] attempted to clarify the 1977 regulation's requirement that claimants be afforded access, after a benefit denial, to "pertinent documents." … [T]he Department believed that these changes would make clear that claimants must be provided access to all of the information present in the claims record, whether or not that information was relied upon by the plan ***in denying the claim***[.] … Such full disclosure, which is what the 1977 regulation contemplated, is necessary ***to enable claimants to understand the record on which the decision was made and to assess whether a further appeal would be justified.***

65 Fed. Reg. 70,252 (emphasis added). The DOL said nothing about obtaining and rebutting evidence generated during the administrative appeal.

The plain language of the 2000 version of Section 503-1, as further explained by the DOL's preamble to the 2000 regulation, confirms that a claimant has two opportunities to obtain "relevant" documents: after the initial adverse determination ((h)(2)(iii)), and after the adverse determination on review ((j)(3)).

The DOL's 2018 amendment to Section 503-1, which governs claims filed on or after April 1, 2018, further confirms this. As discussed above, the 2018 regulation added a new subsection (h)(4) requiring "plans providing disability benefits" to disclose new or additional

evidence generated during administrative appeal, and to give claimants an opportunity to respond to that evidence, *before* making a decision on the appeal. 29 C.F.R. § 2560.503-1(h)(4). If the 2000 regulation had already required *all* plans to make such a disclosure prior to deciding an administrative appeal, then it would make no sense for the DOL to create this new obligation in the 2018 regulation, and to limit its application to "plans providing disability benefits." Accordingly, the Court should, reject the flawed analysis and conclusion of *Hughes*.

Even if this Court were to adopt the reasoning in *Hughes*, Plaintiff's theory still fails because Plaintiff does not claim he was deprived of the opportunity to respond to a discrete, relevant document; rather, he claims he was entitled to a continual download of *any* information developed by Hartford Life on administrative appeal regarding Plaintiff's "employment, plan enrollments, sources of compensation etc." Indeed, plaintiff expressly leaves open the classes of documents to which he is entitled using the phrase "etc." in his description. Pl. Br., p. 8 (citing PFF ¶¶ 149, 151). Plaintiff thus advocates a standard that no Court – including *Hughes* – has endorsed, whereby a claimant is entitled to receive and rebut all information generated in the course of an administrative appeal without limitation.

Indeed, the procedure plaintiff advocates would contravene the goals of ERISA by "set[ing] up an unnecessary cycle of submission, review, re-submission, and re-review." *Metzger*, 476 F.3d at 1166. As demonstrated by the dearth of authority in Plaintiff's brief, there is simply no precedent that plan administrators must afford a claimant the opportunity to review and rebut any piece of information generated on appeal.

**C.    A violation of claim procedures does not compel *de novo* review**

Even if Plaintiff were able to establish some violation of Section 503-1 (he has not), it would not necessarily support elimination of discretion under *Halo v. Yale Health Plan*, 819 F.3d

42 (2d Cir. 2016). Since *Halo,* the Second Circuit has declined to hold that all violations of Section 503-1 necessarily result in a loss of discretion. *See, e.g.*, *Tedesco v. I.B.E. W. Local 1249 Ins. Fund,* 674 F. App'x 6 (2d Cir. 2016) ("We remand so that the district court may consider in the first instance whether, under *Halo,* these procedural deficiencies warrant *de novo* review of Tedesco's denial-of-benefits claim"). Similarly, *Wilson v. Aetna Life Ins. Co.,* 2016 U.S. Dist. LEXIS 135396 (N.D.N.Y. Sep. 30, 2016), declined to find that a violation of Section 503-1 compelled *de novo* review. *Wilson* considered *Halo,* and explained: "in *Halo,* the plan's denials of coverage were not only repeatedly untimely, but also failed to provide an explanation as to why the plan was denying coverage. As such, it was impossible for the Plaintiff and the reviewing court to determine the reason for the denial of coverage." *Id.* at *8. In contrast, *Wilson* involved "a single denial of Plaintiff's claim that, while untimely, provided the specific reason for the denial and was otherwise in full conformity with the applicable regulations and the Plan. ... Further, plaintiff has not alleged that she was in any way harmed by the delay, nor could she." *Id.*

Notably, Plaintiff's claim does not involve a denial or termination of benefits. Hartford Life approved Plaintiff's claim and continues to pay LTD benefits.

Plaintiff has not provided a basis to disregard the grant of discretion in the Plan, and the Court should apply the arbitrary and capricious standard of review.

**D. The purported conflict should have no weight, and does not change the outcome**

Plaintiff further argues that "[t]he Court must also weigh Hartford's financial self-interest along with procedural and substantive defects in its decision-making." Pl. Br. p. 14 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117-19, 128 S. Ct. 2343, 2351 (2008)). The existence of a structural conflict of interest – arising where a claim administrator determines

claims and pays benefits – is "but one factor among many that a reviewing judge must take into account" in determining whether a claim decision is arbitrary and capricious. *Glenn*, 554 U.S. at 116-17, 128 S. Ct. 2343 at 2351.

Where a structural conflict exists, the question under *Glenn* is how much, if any, weight to give to the conflict factor. "No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010); *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). This is consistent with *Glenn*'s statement that the conflict should "prove less important (perhaps to the vanishing point)" where the "administrator has taken active steps to reduce potential bias and to promote accuracy[.]" *Glenn*, 554 U.S. at 117, 128 S. Ct. at 2351.

As discussed in more detail below, the bases on which Plaintiff claims a purported conflict exists show that there is, in fact, no evidence that any structural conflict influenced Hartford Life's determination. Accordingly, the alleged conflict should be given little or no weight in the Court's review, and cannot change the outcome.

Plaintiff first charges that evidence of Hartford Life's conflict rests in various aspects of his appeal of Hartford Life's initial determination that he was not disabled under the terms and conditions of the Policy. Pl. Br. pp. 15-16. That conflict clearly did not influence Hartford Life's determination, because Hartford Life determined that plaintiff was, in fact, disabled through the administrative appeal process. AR254-59.[3] Indeed, Plaintiff's disabled status is not even at issue

---

[3] *See, e.g.*, *Cooper v. Life Ins. Co. of N. Am.*, No. 1:05-CV-111, 2011 WL 826190, at *6 (E.D. Tenn. Mar. 2, 2011) ("Given there is no indication LINA has acted in bad faith, the Court finds LINA has offered a reasoned explanation for employing its method of calculation based on the plain meaning of the Plan.") *LeBlanc v. Sullivan Tire Co.*, 526 F. Supp. 2d 75, 80 (D. Me. 2007) (finding "no evidence of any improper motivation" with respect to Guardian Life's determination that a claimant's disability benefit calculation excluded his monthly position incentive and his monthly commission base); *Brosted v. Unum*
(cont'd)

in this litigation, as Hartford Life continues to pay LTD benefits to Plaintiff. If anything, the fact that Hartford Life overturned its initial adverse determination on appeal and continues to pay LTD benefits to Plaintiff demonstrates that the administrative process does work, unfettered by any purported bias, and confirms that Hartford Life is willing to and does overturn adverse decisions on review when it concludes they are incorrect.

Plaintiff next contends that Hartford Life "engaged in willfully inaccurate cherry-picking … to prove that the 'company' that paid the premiums for Mr. Mayer's coverage … was RAI," Pl. Br. p. 16. This is a remarkable argument given that plaintiff himself *admits* that "RAI paid premiums for Mr. Mayer's coverage." Pl. PFF ¶ 44. Hartford Life's decisions cannot be deemed defective or conflicted where Plaintiff himself concedes they are accurate and correct.

Similarly, Plaintiff proffers that evidence of a conflict may be found in the fact that some confusion existed early in Plaintiff's claim regarding which Booklet governed his claim. Pl. Br. 16. Here again, Plaintiff's contention is defeated by his own concession that "[t]he LTD Booklet-Certificates are largely identical in term of the relevant benefit and administration provisions." Pl. PFF. ¶ 15 n.2.

In addition, Plaintiff recycles prior arguments as evidence of a conflict. He argues a conflict is evident because Hartford Life "missed appeal-level notification and decision deadline procedures – all while providing false information about the reasons for its delays." Pl. Br. p. 17. Plaintiff offers no explanation as to why Hartford's extension need was allegedly "false," and, as discussed *supra*, at pp. 4-7, the extension notification was neither late nor deficient. He similarly

---

*Life Ins. Co. of Am.*, 349 F. Supp. 2d 1088, 1090 (N.D. Ill. 2004), *aff'd*, 421 F.3d 459 (7th Cir. 2005) (finding, on *de novo* review, no violation of ERISA where First Unum recalculated a claimant's monthly earnings to exclude the claimant's "pre-tax contributions to his Section 125 Flexible spending account and to his deferred compensation plan," which were erroneously included in the claimant's initial benefit award).

finds evidence of a purported conflict because Hartford Life allegedly "withheld relevant documents requested." Pl. Br. p. 17. As discussed *supra*, at pp. 7-12, it did not.

Plaintiff attacks Hartford Life's use of surveillance in determining whether plaintiff met the Policy's definition of disabled, Pl. Br. p. 18, but provides no authority to suggest that mere use of surveillance alone is evidence of conflict and no factual predicate to deduce a purported conflict, since Hartford Life ultimately determined that plaintiff is, in fact, disabled. Moreover, the use of surveillance is a well-established investigatory tool. *Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003), *aff'd* 124 Fed. Appx. 669 (2d Cir. 2005), *cert. denied*, 546 U.S. 843 (2005) ("Defendant was permitted to evaluate plaintiff's complaints of pain in light of the totality of her behavior, including the activity on the surveillance tape"); *Ingravallo v. Hartford Life Ins. Co.*, 563 Fed. Appx. 796, 800 (2d Cir. Apr. 24, 2014) ("Hartford stated that it utilized 'clinical information and the video surveillance' in its determination"); *Rotondi v. Hartford Life & Accident Grp.*, 2010 U.S. Dist. LEXIS 99502, at *31-32 (S.D.N.Y. Sep. 22, 2010) ("Hartford, in its discretion, decided that the medical evidence … along with the videotaped surveillance footage of plaintiff provided it with sufficient information to evaluate Plaintiff's LTD claim.").

Finally, Plaintiff contends that Hartford Life "ignored evidence and argument submitted by [him]" Pl. Br. p. 17. As discussed *infra*, at pp. 18-20, this argument is not only contradicted by the contents of the Administrative Record, it is disproven by Plaintiff's own Proposed Findings of Fact, which confirm that Hartford Life fully evaluated Plaintiff's submissions.

Plaintiff cannot establish that Hartford Life's actions were affected by any structural conflict. Further, even if the Court were to determine that Hartford Life's structural conflict warranted some weight, the function of the conflict factor is to "act as a tiebreaker when the other factors are closely balanced." *Glenn*, 128 S.Ct. at 2351. *See also*, *Hines v. First Unum Life*

*Ins. Co.*, 2016 U.S. Dist. LEXIS 37766, at *58 (S.D.N.Y. Mar. 23, 2016) ("Even were the Court to weigh the structural conflict present here in Plaintiff's favor, First Unum's overall determination was not so unreasonable or unsupported by substantial evidence as to render that conflict outcome determinative."); *Schrom v. Guardian Life Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 38039, at *29 (S.D.N.Y. Mar. 19, 2013) ("Assuming arguendo there were an actual conflict, this is not a case in which the factors are so closely balanced that a tiebreaker is required"). Here, like *Hines* and *Schrom*, the substantive factors regarding the merits of Plaintiff's claim are not closely balanced, and the conflict factor is immaterial.

## II.    Plaintiff's assertion that the entity he controls has the authority to set his earnings for disability purposes is unfounded and incorrect

Plaintiff's lawsuit is about one thing: obtaining a benefit that was never bargained or paid for.  Plaintiff asks this Court to recognize Ringler Scarsdale as his Employer under the Policy for purposes of calculating his monthly benefit even though Ringler Scarsdale bore none of the burdens and duties of the Employer under the Plan and ERISA. The Court should reject Plaintiff's invitation.

There is no dispute that Ringler Associates considered itself the Employer under the Policy, as well as the plan administrator of the Plan, responsible for complying with ERISA and with a duty "to ensure that all claims are submitted properly and to clarify any ambiguity." AR470, 1405. In contrast, Ringler Scarsdale did not establish, sponsor or maintain the Plan, and did not even exist at the time the Plan was established in 1999, AR45.

There is also no dispute that Ringler Associates is a Policyholder and Employer under the terms of the Plan. Hartford Life contends that Ringler Associates is the *only* Policyholder and Employer, while Plaintiff contends that Ringler Scarsdale is *also* a Policyholder and Employer, but only for the purpose of determining Plaintiff's monthly benefit amount. Even if the Court

17

were to conclude that multiple entities could be Policyholders and Employers under the Plan, it was reasonable, and correct, for Hartford Life to conclude that Plaintiff's Pre-disability Earnings, and thus his disability benefit, should be determined based on the information provided by Ringler Associates, not Ringler Scarsdale.

Plaintiff does not dispute that he treated Ringler Associates as the Policyholder and Employer of the Plan from 1999 through 2015. His position conveniently changed when he became disabled and he sought to increase his disability benefit. For example, the Policy provides that "[t]he Employer pays the premium for the insurance[.]" AR69. plaintiff has admitted that at all relevant times "RAI [Ringler Associates] paid premiums for Mr. Mayer's coverage under the Plan[.]" Pl. PFF, ¶ 44. Ringler Associates confirmed its responsibility to calculate and pay premiums. AR1405 ("[t]he premium payments are our responsibility and the calculations are based on the payroll activity through our ADP payroll system"); *id.* (it is Ringler Associates' responsibility to "ensure that the premium calculations are correct and paid in a timely manner"). The unsubstantiated assertion that Ringler Associates subsequently deducted from Ringler Scarsdale's "account," even if accurate, does not change the fact that it was Ringler Associates that engaged in the Employer function of calculating and paying those premiums in the first place.

Plaintiff acknowledges that neither he nor Ringler Scarsdale generated or maintained records of his enrollment in the Plan, which records he asserts are critical to his claim. The Policy states that "Eligible Persons will be enrolled automatically by the Employer." AR46. If Ringler Scarsdale had been Plaintiff's "Employer" under the Policy, then Ringler Scarsdale would have the records of that enrollment. But Plaintiff has not come forward with any such records, let alone an explanation of their absence (because he cannot). Plaintiff attempts to shift

the blame for the insufficiency of enrollment records, Pl. Br., pp. 12-13 (challenging explanation of change in record-keeping), but in doing so concedes that it was Ringler Associates – not Ringler Scarsdale – that "clearly bore the burden to maintain" those records. Thus, Plaintiff concedes that Ringler Associates was responsible for the Employer function of enrolling Eligible Persons.

Even during his claim, Plaintiff continued to acknowledge Ringler Associates as his Employer for purposes of LTD benefit administration matters. Plaintiff did not submit all of his claim documents directly, or have Ringler Scarsdale submit them; he sent most claim documents to Ringler Associates for submission to Hartford Life. AR1552-65. Hartford Life notified plaintiff on December 28, 2015 that it was seeking "a Physical Demands Analysis and confirmation of your regular monthly rate of pay as well as bonuses and commission for the calendar year 2013 and 2014[,]" and advised Plaintiff that it had requested this information "directly from your Employer. … Please urge your Employer to send us the requested information as soon as possible." AR319. Plaintiff admits that he relied on Ringler Associates to provide this information: "Ms. Ferrari also provided a completed Physical Demands Analysis ('PDA') form, dated December 29, 2015." Pl. PFF, ¶ 64(a). When Plaintiff disagreed with some of Ringler Associates' statements in the PDA, Plaintiff sought to convince Ringler Associates to change it. *Id.* ("Ms. Ferrari refused to correct the form and resign it with the corrections Mr. Mayer had made for her."). On administrative appeal, Plaintiff *again* relied on Ringler Associates to submit "a corrected Physical Demands Analysis to Hartford." Pl. PFF, ¶ 96.

Similarly, Plaintiff relied on representations by Ringler Associates – not Ringler Scarsdale – regarding the nature of his employment. As support for the assertion that he was a "Producer" under the terms of the Policy, Pl. PFF, ¶ 19, Plaintiff cites to a Ringler Associates email and a

Ringler Associates job description. AR1508 ("Greg is a Producer."); AR1473 ("Responsibilities [of job]: Shall comply with the rules and regulations of the Company as they pertain to producers and agents of the Company").

Plaintiff cannot eliminate Ringler Associates' status as Employer; the best he can do is assert that there was more than one. That would mean that Hartford Life was presented with a choice between: (a) accepting the earnings reported by Ringler Associates – which did not change during the course of the claim and on which Ringler Associates based its premium calculation and payments; or (b) accepting the earnings reported by Plaintiff, which increased dramatically and without explanation or documentation after Hartford Life began paying benefits. *See* Opening Br., pp. 8, 10.

Hartford's decision to rely on the information that Ringler Associates provided was plainly reasonable. Moreover – even if the Court were to review Hartford Life's determination under a *de novo* standard – Plaintiff cannot establish that Hartford Life was incorrect in giving priority to the information provided by Ringler Associates under the facts of this case.

### III. Plaintiff's other attacks on the administrative review are without merit

In addition to his primary argument about the identity of his Employer, Plaintiff has asserted several other related arguments about Hartford Life's administration of his claim. These are without merit.

#### A. Hartford Life did not ignore Plaintiff's submissions regarding his earnings

Plaintiff argues that Hartford Life "ignored that Mr. Mayer was wholly employed by Affiliate RAI-Scarsdale (not RAI)" and "refused to consider Mr. Mayer's corrected W-2 forms" that were "critical to understanding Mr. Mayer's compensation." Pl. Br. pp. 6-7. "Instead of investigating and resolving the discrepancy between the two W-2s," Plaintiff argues, "Hartford

repeatedly and robotically asserted that RAI was the employer whose word governed." Pl. Br. p. 7. This argument is not only contradicted by the contents of the Administrative Record, it is disproven by Plaintiff's own Proposed Findings of Fact, which confirm that Hartford Life fully evaluated Plaintiff's submissions. *See, e.g.*, Pl. PFF, ¶ 64 ("In a series of emails in late December 2015 and early January 2016, Ms. Tonya Martinez (Hartford Ability Analyst) sought clarification from Ms. Ferrari (RAI Operations Manager) regarding Mr. Mayer's claim."); Pl. PFF ¶ 109 (detailing list of "outstanding issues and evidence regarding Mr. Mayer's monthly earnings" that Hartford Life referred "for managerial review"); Pl. PFF ¶ 110 (discussing managerial review); Pl. PFF ¶ 117 (discussing January 5, 2017 conference call between Hartford Life, Ringler Associates, and Ringler Associates' broker regarding Plaintiff's contentions).

In addition to Plaintiff's own admissions, the Administrative Record is full of evidence that Hartford Life fully investigated and evaluated Plaintiff's submissions before reaching its determination. *See* Opening Br. pp. 5-13. *See also, e.g.*, AR1508-09 (communications with Ringler Associates regarding Plaintiff's earnings); AR1506-07 (communications with Ringler Associates regarding difference in earnings reported by Plaintiff); AR1504-05 (communications with Ringler Associates regarding a 1099 that Plaintiff had supplied); AR1405 (Ringler Associates' email to Plaintiff stating that it is "unable to substantiate or determine how Ringler Associates Scarsdale was able to provide you an additional $125,000 in 2014 as income"); AR159 (communication with Ringler Associates regarding earnings); AR696-771 (bi-weekly pay statements received from Ringler Associates).

Plaintiff cites to a series of cases in support of his contention that Hartford Life refused to consider evidence he submitted, Pl. Br., pp. 19-21, but each is inapposite. If anything, the contrast between this case and the cited cases confirms the extent of Hartford Life's evaluation:

- In *Ricciardi v. Metro. Life Ins. Co.*, No. 16-CV-3805(CM), 2019 WL 652883 (S.D.N.Y. Feb. 15, 2019), an banker's employer provided a shockingly low Eligible Pay figure of 34,527.20 per year without any documentation or explanation whatsoever. The Court itself recognized: "there is absolutely no indication in the record that Morgan Stanley explained to MetLife the information and procedures it used to determine the $34,527.20 number, such as what Ricciardi's base salary was, what his W-2 earnings were, what deductions were appropriately made from those earnings, and how it arrived at the Eligible Pay number that it had to compare to his base salary per the formula in the Plan." *Id*. at *2. The administrative record in that case contained no indication "that MetLife performed any independent calculation of Ricciardi's [Benefits Eligible Earnings] – or that it was given the data that would have allowed it to do so." *Id*. at *5.

- *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669 (10th Cir. 2019), was a *sui generis* matter in which the dispute was whether the claimant's job, which required some sales work, placed him in a class covering non-salespeople or a class covering salespeople. The Tenth Circuit concluded that plaintiff's job entailed sufficient sales to be included in the class covering salespeople.

- In *Schewitz v. Aetna Life Ins. Co.*, No. 18-CV-6119, 2019 WL 2189263 (N.D. Ill. May 21, 2019), the Court found that Aetna erroneously determined that the plaintiff's annual predisability earnings were $156,011 (as reported by the employer without providing W-2s or other documentation), rather than $322,689 documented in a contract between the claimant and the employer.

- In *MacMillan v. Provident Mut. Life Ins. Co. of Philadelphia*, 32 F. Supp. 2d 600, 607–08 (W.D.N.Y. 1999), the court found "no language in the plan that support[ed] … exclusion of … [the] earnings" that Unum had excluded based upon an unsubstantiated statement from the employer.

In each of these cases, the claim administrator erred by accepting an *unsubstantiated* statement from an employer, which was contradicted either by documentation or by logic. In contrast, Hartford Life obtained documentation from Ringler Associates confirming Plaintiff's earnings, including tax withholding records and three years of bi-weekly pay records. AR696-771. Hartford Life also communicated repeatedly with Ringler Associates regarding Plaintiff's assertions, and Hartford Life also received (from Plaintiff) records of some of his own communications with Ringler Associates about these issues. Hartford Life did not ignore Plaintiff's submissions, and it did not accept without question or verification what Ringler

Associates reported. Hartford Life gathered all information available to it, and then made a reasoned determination.

**B.    Hartford Life did not change its rationale**

Plaintiff repeatedly mischaracterizes the course of events in his claim administration in a misguided attempt to charge Hartford Life with "flip-flopping" its position. The Court should reject these misrepresentations.

For example, Plaintiff argues that Hartford Life "initially refused to include the SEP-IRA contribution because 'Ringler [Associates] doesn't show any SEP in 2013 and 2014,' but later claimed that it could not count Mr. Mayer's SEP-IRA contributions because a SEP IRA was not one of the specifically identified retirement vehicles in the list in the Monthly Rate of Basic Earnings definition" Pl. Br. p. 22 (citing Pl. PFF ¶¶ 117(c) and 158(j)). This is a false statement based on a deceptively selective quoting from the Administrative Record. Specifically, Plaintiff cites AR159 as the source of the quote that "Ringler doesn't show any SEP in 2013 and 2014[.]" But Plaintiff deleted the rest of the sentence; the full quote reads: "Ringler doesn't show any SEP in 2013 and 2014 – explained that since *the SEP plan is not listed in the MRBE definition and we will not be considering it.*" AR159 (emphasis added). Thus, Hartford Life asserted from the outset that Plaintiff's SEP-IRA was not one of the specifically identified retirement vehicles that the Policy permits to be included in calculating the Monthly Rate of Basic Earnings.

**Conclusion**

For all of the foregoing reasons, the Court should confirm Hartford Life's determination and dismiss this action.

Dated: July 9, 2019

DEFENDANTS,

By: /s/ *Patrick W. Begos*
Patrick W. Begos
Gregory J. Bennici
ROBINSON & COLE LLP
1055 Washington Boulevard
Stamford, CT 06901
Tel. No.: (203) 462-7500
Fax No.: (203) 462-7599
E-mail: pbegos@rc.com
E-mail: gbennici@rc.com