UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GREGORY MAYER,                                          :
              Plaintiff,                       :
                                               :   **OPINION AND ORDER**
v.                                                      :
                                               :   18 CV 2789 (VB)
RINGLER ASSOCIATES INC. AND                             :
AFFILIATES LONG TERM DISABILITY                         :
PLAN and HARTFORD LIFE AND                              :
ACCIDENT INSURANCE COMPANY,                             :
              Defendants.                      :
--------------------------------------------------------------x

        Plaintiff Gregory Mayer brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., alleging defendants Ringler Associates Inc. and Affiliates Long Term Disability Plan (the "Plan") and Hartford Life and Accident Insurance Company ("Hartford Life") wrongfully calculated his long-term disability benefits and determined that his benefits are fully taxable. Plaintiff seeks reassessment of those benefits, payment of unpaid benefits allegedly owed to him, and payment of attorneys' fees and costs he has incurred in this case.

        The parties have agreed to a bench trial on a stipulated record.[1] (Doc. #32).

        For the following reasons, the Court finds and concludes defendants are entitled to judgment in their favor dismissing the complaint in its entirety.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B).

---

[1]     The Second Circuit has approved of submitting this type of action for a bench trial on a stipulated record. See Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).

1

**FINDINGS OF FACT**

The parties have submitted briefs and a stipulated record, which reflect the following factual background.

Plaintiff is, and at all relevant times was, a resident of the State of New York. From 2001 to 2015, he was engaged in the sale of annuities to fund structured personal injury settlements. Plaintiff owned and operated Ringler Associates Scarsdale, Inc. ("RAI-Scarsdale"), an affiliate of Ringler Associates Incorporated ("RAI").

In September 2015, plaintiff stopped working due to physical limitations. He underwent multiple surgeries to his knees and spine. Following his surgeries, plaintiff attempted intermittent work activities from October through December 2015, but concluded he could no longer work. On December 16, 2015, plaintiff applied for long-term disability benefits under the Plan established by RAI.

A. The Plan

The Plan's coverage is provided through Group Policy No. GLT-216897, issued by Hartford Life. The Plan identifies "Employer" as "the Policyholder," and defines "Policyholder" as "Ringler Associates Incorporated and Affiliates," with an address of 27422 Aliso Creek Road, Aliso Viejo, California. (AR 45, 58, 68).[2] The same information is provided for the identity and address of the "Plan Administrator." (AR 68). The Plan is "administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan." (AR 69).

The Plan incorporates several "Booklets," which provide different coverages to different classes of employees. As relevant here, Booklet 4.5 covers all active employees, including

---

[2] "AR ___" refers to page numbers of the administrative record filed in hard copy in this case.

"producers," not paying their own premiums, whereas Booklet 1.32 covers all producers who choose to pay their own premiums. (AR 8, 45, 82). Plaintiff was a "producer" for purposes of Plan coverage. (AR 1473, 1508).

The Plan provides for a gross long-term disability benefit of 66⅔ percent of a claimant's "Pre-Disability Earnings." (AR 48). Pre-Disability Earnings are defined as "your Monthly Rate of Basic Earnings on the day before you became disabled." (AR 60). The Plan defines "Monthly Rate of Basic Earnings" as:

> [Y[our average monthly rate of pay, including Bonuses and Commissions, from the Employer for the 2 calendar year(s) ending just prior to the date you become Disabled[:]
>
> 1.   including contributions you make through a salary reduction agreement with the Employer to:
>
>> a) an Internal Revenue Code (IRC) Section 401(K), 403(b) or 457 deferred compensation arrangement;
>>
>> b) an executive non qualified deferred compensation arrangement; or
>>
>> c) a salary reduction arrangement under an IRC Section 125 plan; and
>
> 2.   not including overtime pay or expense reimbursements for the same period as above.

(AR 59).

The Plan further states that if the Employer pays the premiums for an employee's coverage, it "may allocate part of the cost to the employee. The Employer determines the portion of the cost to be paid by the employee." (AR 69).

According to the Plan, "[t]he Policyholder will give Hartford Life all information [it] needs regarding matters pertaining to insurance." (AR 120). In addition, the Plan empowers Hartford Life to "inspect any of the Policyholder's documents, books, or records which may affect the insurance or premiums of this policy," and "[i]f the Policyholder gives Hartford Life

3

any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount." (AR 120).

Moreover, the Plan designates Hartford Life "as the claims fiduciary for benefits provided under the Policy" and grants Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (AR 31, 68, 105).

B. <u>Plaintiff's Long-Term Disability Benefits Claim</u>

As noted above, plaintiff applied for long-term disability benefits under the Plan on December 16, 2015. On December 17, 2015, RAI faxed additional information to Hartford Life in support of plaintiff's claim, including the "Employer's Section" of the application for long-term disability benefits, completed by RAI Operations Manager Carol Ferrari. Included with this information was a copy of plaintiff's 2014 W-2 form showing $100,000.16 in earnings, and a statement from Ferrari that RAI paid the premiums for plaintiff's long-term disability benefits.

On December 21, 2015, plaintiff faxed additional information in support of his claim, including a 2014 Form 1099-MISC, showing $125,000 paid to plaintiff by his company, RAI-Scarsdale, and Simplified Employee Pension ("SEP-IRA") contributions of $50,000 and $52,000, made in 2014 and 2015, respectively. Plaintiff alleged the $125,000 payment reflected on the Form 1099-MISC was a "nonemployee compensation" bonus that should be included in the calculation of his Pre-Disability Earnings, and that his SEP-IRA contributions should also be taken into account in his Pre-Disability Earnings calculation.

Hartford Life then sought additional information from RAI to clarify plaintiff's submissions. In response, Ferrari provided Hartford Life a copy of plaintiff's 2013 W-2 form showing a total salary of $150,000.16, which included a $50,000 bonus, and again provided a copy of plaintiff's 2014 W-2 form, which showed $100,000.16 in earnings. Ferrari also noted

4

that RAI's general ledger for RAI-Scarsdale did not show SEP-IRA contributions, and that RAI did not issue the Form 1099-MISC that plaintiff provided to Hartford Life. Finally, Ferrari noted RAI pays long-term disability premiums on W-2 gross salaries, and thus paid premiums for plaintiff's disability benefits coverage based on the W-2s RAI had on file for plaintiff.

On January 12, 2016, plaintiff wrote to Hartford Life, contending RAI-Scarsdale, not RAI, should be considered his employer for purposes of claim adjudication, and that RAI-Scarsdale's records demonstrate plaintiff received $463,256 in commissions in 2013, and $448,491 in commissions in 2014.

In a February 16, 2016, email, Ferrari informed plaintiff "[t]he premium payments are [RAI's] responsibility and the calculations are based on payroll activity through our ADP payroll system which we keep for all Associates." (AR 1405).

On May 13, 2016, Hartford Life denied plaintiff's claim for long-term disability benefits. Along with the denial letter, Hartford Life sent plaintiff a copy of the Plan, attached to which was a copy of Booklet 1.32, which covers producers who choose to pay their own premiums.

On May 25, 2016, Hartford Life responded to a request from plaintiff for all documents relevant to his claim, and again included with its production a copy of Booklet 1.32.

On November 7, 2016, plaintiff appealed the denial of his claim. On December 6, 2016, Hartford Life overturned its initial decision to deny plaintiff long-term disability benefits, and informed plaintiff it would calculate his gross long-term disability benefit.

On December 21, 2016, Hartford Life contacted RAI to confirm plaintiff's earnings information. Hartford Life noted that as part of plaintiff's appeal submission, he submitted "corrected" W-2s prepared by RAI-Scarsdale, showing 2013 earnings of $151,842, and 2014 earnings of $399,614.01. To that end, plaintiff asserted his Monthly Rate of Basic Earnings was

5

$22,977.33 (($151,842 + $399,614) / 24). Plaintiff also asserted his claim award should not be fully taxable because he, not RAI, had paid the premiums for coverage.

On January 6, 2017, Hartford Life calculated plaintiff's monthly Pre-Disability Earnings as $10,416.68. Hartford Life explained that pay statements provided by RAI showed plaintiff "received a bi-weekly payroll in the amount of $3,846.16 for the time period 01/01/2013–12/31/2014. He received one bonus in the amount of $50,000 on 12/20/2016. There was no other bonuses or commissions paid during this time period." (AR 251). Hartford Life further noted: "The total pay for the 2 calendar years prior to your Disability was $250,000.32. The Monthly Rate of Basic Earnings is calculated as $250,000.32 / 24 = $10,416.68." (Id.). Upon determining plaintiff's Pre-Disability Earnings were $10,416.68, Hartford Life then calculated plaintiff's gross monthly disability benefit: $6,944.45, or 66⅔ percent of his Pre-Disability Earnings.

On January 26, 2017, plaintiff's attorney requested from Hartford Life copies of documents relevant to the administration of plaintiff's claim. On February 10, 2017, Hartford Life provided plaintiff's attorney a copy of its claim file, and included therein a copy of Booklet 4.5, rather than Booklet 1.32, which Hartford Life had previously produced. As noted above, Booklet 4.5 governs coverage for producers who do not pay their own premiums, whereas Booklet 1.32 governs coverage for producers who choose to pay their own premiums.

On July 5, 2017, plaintiff's attorney wrote a letter to Hartford Life, notifying the latter of plaintiff's intent to appeal the determination of plaintiff's gross monthly disability benefit and also confirming plaintiff's deadline to file an appeal as July 13, 2017. (AR 630). Accordingly, on July 13, 2017, plaintiff's attorney submitted materials in support of plaintiff's appeal. (AR 529–91). Hartford Life designated July 13, 2017, as the date of commencement of plaintiff's appeal.

In his appeal submission, plaintiff asserted his benefits should be calculated from compensation reflected in corrected RAI-Scarsdale W-2s, as well as his $102,000 SEP-IRA contributions, because RAI-Scarsdale, not RAI, should be considered his "Employer" for purposes of claim assessment. Plaintiff also contended RAI-Scarsdale received more than $900,000 in commissions from RAI in 2013 and 2014, as reflected in a report generated by RAI-Scarsdale. However, that report showed payments from entities other than RAI. In sum, plaintiff asserted earnings in 2013 and 2014 of $651,456, rather than $250,000. This calculation no longer included plaintiff's previous assertion of a $125,000 "nonemployee compensation" bonus in 2014.

By letter dated August 24, 2017, Hartford Life notified plaintiff it was "still awaiting information from the Employer needed to fully investigate [plaintiff's] claim," and it should render a decision on plaintiff's appeal by October 10, 2017. (AR 239).

By letter dated September 14, 2017, plaintiff requested any correspondence or evidence pertinent to the appeals process, as well as an opportunity to respond to any such new material developed in the course of the appeal. Plaintiff made a similar request on October 4, 2017.

In an email to plaintiff on September 20, 2017, which subsequently was forwarded to Hartford Life, RAI maintained it was the "Employer" under the Plan, not RAI-Scarsdale, as asserted by plaintiff.

On November 9, 2017, Hartford Life issued a decision letter upholding its claim determination. Accordingly, Hartford Life determined that its initial Pre-Disability Earnings calculation was correct. Hartford Life further determined the Plan is self-administered not by RAI-Scarsdale, but by RAI—the Policyholder, Employer, and Plan Administrator, pursuant to the Plan's language—and thus RAI was responsible for keeping all enrollment documents on file

7

and administering the Plan. Accordingly, Hartford Life determined it correctly adjudicated plaintiff's claim based on the information provided by RAI.

Moreover, Hartford Life explained plaintiff's SEP-IRA contributions were disregarded from the Pre-Disability Earnings calculation because a "SEP-IRA is considered a 408(k) plan," and thus not a salary-reduction or other agreement within the Plan's definition of "Monthly Rate of Basic Earnings." (AR 237).

Finally, on appeal, Hartford Life determined that Booklet 4.5, not Booklet 1.32, governed plaintiff's claim. As noted above, Booklet 4.5 provides coverage for producers who do not pay their own premiums under the Plan. Hartford Life therefore confirmed plaintiff's claim benefit was fully taxable, as RAI paid to Hartford Life the premiums for plaintiff's coverage. Hartford Life explained that even if RAI reallocated premium costs to RAI-Scarsdale or plaintiff, RAI nevertheless was responsible for, and paid, premiums to Hartford Life for plaintiff's long-term disability coverage.

## CONCLUSIONS OF LAW

I. <u>Disputed Standard of Review</u>

In a bench trial, the Court reviews the plan administrator's decision <u>de novo</u> unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). When such authority is granted—as it was in this case—the Court typically reviews the administrator's decision under an arbitrary and capricious standard. <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 132 (2d Cir. 2008). However, if the administrator fails to establish it substantially complied with ERISA's claims-procedure regulations, or if the Plan's discretionary language is preempted by an applicable statute, <u>de novo</u> review is appropriate. See <u>Thoma v. Fox Long Term Disability Plan</u>, 2018 WL 6514757, at *25–26 (S.D.N.Y. Dec. 11, 2018).

The administrator "bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." Sharkey v. Ultramar Energy, 70 F.3 226, 230 (2d Cir. 1995).³

The parties contest whether the Court must review Hartford Life's decision respecting plaintiff's long-term disability benefits de novo or under an "arbitrary and capricious" standard.

A. California Law

Plaintiff first contends California's "no discretion" insurance law governs this Court's review of Hartford's long-term disability plan determination, and, as a result, a de novo standard of review applies. Defendants argue the California statute does not apply, and thus does not bar discretion.

The Court agrees with defendants.

The California Insurance Code states in pertinent part:

> If a policy, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds . . . disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this states, that provision is void and unenforceable.

Cal. Ins. Code § 10110.6(a). It continues:

> For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.

Cal. Ins. Code § 10110.6(c).

---

³ Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

9

Plaintiff is, and at all relevant times was, a resident of New York, not California. Accordingly, by its plain terms, the above statute does not govern Hartford Life's determination of plaintiff's long-term disability benefits claim. Indeed, "the statute applies only to California residents." Campbell v. Hartford Life & Accident Ins. Co., 2018 WL 4963118, at *8 n.8 (S.D. Fla. Oct. 15, 2018); see also Pfenning v. Liberty Life Assur. Co., 2015 WL 9460578, at *8 (S.D. Ohio Dec. 28, 2015), vacated and remanded by agreement Pfenning v. Liberty Life Assur. Co. of Bos., 2016 WL 11618609, at *1 (6th Cir. Aug. 2, 2016) ("Liberty further argues that this discretionary clause is valid because California law only applies to California residents. The Court agrees.").[4]

Plaintiff relies on Orzechowski v. Boeing Co. Non-Union LTD Plan No. 625, 856 F.3d 686 (9th Cir. 2017), to argue the contrary. But in that case, the plaintiff was a California resident, and thus the statute was applicable. See Complaint at 3, Orzechowski v. Boeing Co. Non-Union LTD Plan No. 625 (C.D. Cal. Nov. 2, 2012), ECF No. 1. That is not the case here.

B.  Alleged ERISA Violations

Plaintiff next contends Hartford Life violated ERISA's claim-procedure regulations, and as a result its decision respecting plaintiff's long-term disability benefits is not entitled to deference. Specifically, plaintiff argues Hartford Life failed to comply with claims-procedure requirements set forth in 29 C.F.R. § 2560.503-1 ("Section 503-1"), by (i) refusing to consider plaintiff's evidence and arguments concerning his earnings; (ii) failing to decide plaintiff's appeal of Hartford Life's disability coverage determination within forty-five days, or, in the

---

[4]  In Pfenning v. Liberty Life Assur. Co., the defendant insurer first argued the California statute did not apply because the plaintiff was not a resident of California, but, following plaintiff's appeal, agreed to de novo review in the district court. Pfenning v. Liberty Life Assur. Co. of Bos., 354 F. Supp. 3d 826, 827 (S.D. Ohio 2017). Accordingly, the Sixth Circuit did not address the application of the California statute at issue.

10

alternative, failing to provide plaintiff a timely and sufficient notice warranting an extension of time to decide the appeal; and (iii) failing to provide all requested documentation concerning plaintiff's appeal.

With respect to plaintiff's first argument—that Hartford Life failed to consider plaintiff's submissions and arguments—the Court disagrees. Simply, the administrative record contradicts plaintiff's assertion. Included therein are multiple communications between Hartford Life and RAI regarding plaintiff's submissions in support of this claim, as well as documents demonstrating Hartford Life's investigation and consideration of plaintiff's submissions. In other words, the administrative record demonstrates Hartford Life accounted for plaintiff's submissions, on direct review and on appeal.

The Court is also not persuaded by plaintiff's second contention, that Hartford Life did not timely inform plaintiff of its need for an extension of time to assess plaintiff's appeal, and that Hartford Life cited no special circumstances for the extension.

If the insurer determines it cannot resolve a claimant's appeal within forty-five days of the claimant's submission, Section 503-1(i)(3)(i) requires the insurer to provide the claimant an extension notice within that timeframe indicating the "special circumstances" requiring an extension of time. 29 C.F.R. § 2560.503-1(i)(3)(i) (modifying for disability claim appeals the timeframe set forth in Section 503-1(i)(1)(i)); see also id. § 2560.503-1(i)(1)(i). Pursuant to the Department of Labor's preamble to Section 503-1(i)(1)(i), "'special circumstances' refers to 'reasons beyond the control of the plan.'" Hafford v. Aetna Life Ins. Co., 2017 WL 4083580, at *5 (S.D.N.Y. Sept. 13, 2017) (quoting ERISA Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, 70,250).

On July 5, 2017, plaintiff's attorney wrote a letter acknowledging plaintiff's July 13, 2017, deadline to file an appeal. Plaintiff then submitted substantial materials in support of his

11

appeal on July 13, 2017. Hartford Life reasonably designated July 13, 2017, as the date of commencement of plaintiff's appeal.

On August 24, 2017—forty-two days after July 13, 2017—Hartford Life notified plaintiff it was "still awaiting information from the Employer needed to fully investigate [plaintiff's] claim." (AR 239). Accordingly, Hartford Life did provide plaintiff notice, within forty-five days of plaintiff's appeal, of special circumstances warranting an extension of time to complete its review.

Finally, the Court disagrees with plaintiff's third argument, that Hartford Life violated ERISA's Section 503-1 claim-procedure requirements by failing to provide plaintiff requested documentation prior to its determination on appeal.

The current version of Section 503-1 applies to claims filed on or after April 1, 2018. The regulation states claims procedures "will not . . . be deemed to provide a claimant with a reasonable opportunity for a full and fair review . . . unless . . . the claims procedures":

> (i) Provide that before the plan can issue an adverse benefit determination <u>on review</u> on a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) in connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination <u>on review</u> is required to be provided . . . to give the claimant a reasonable opportunity to respond . . . ; and
>
> (ii) Provide that, before the plan can issue an adverse benefit determination <u>on review</u> on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale; the rationale must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination <u>on review</u> is required to be provided . . . to give the claimant a reasonable opportunity to respond.

29 C.F.R. § 2560.503-1 (h)(4)(i)-(ii) (emphasis added).

However, a prior version of Section 503-1, which was in effect when plaintiff filed his claim, does not contain the above language. Rather, it provides claims procedures "will not . . . be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this section." 29 C.F.R. § 2560.503-1(h)(4). The cited subsections do not require a claims fiduciary to provide a claimant, prior to rendering a decision on appeal, new or additional information developed or considered on review. Several circuit courts of appeals have confirmed as such, holding the version of Section 503-1 applicable to plaintiff's claim does not require disclosure of information generated or received as part of the administrative appeal prior to rendering a decision on review. See, e.g., Midgett v. Washington Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 895 (8th Cir. 2009); Glazer v. Reliance Std. Life Ins. Co., 524 F.3d 1241, 1245 (11th Cir. 2008); Metzger v. UNUM Life Ins. Co. of Am., 476 F.3d 1161, 1167 (10th Cir. 2007). The Second Circuit has yet to weigh in on the issue.

Plaintiff's argument relies heavily on Hughes v. Hartford Life & Accident Ins. Co., 368 F. Supp. 3d 386 (D. Conn. 2019), in which a district court disagreed with the above circuit courts' determinations. In Hughes v. Hartford Life & Accident Ins. Co., an insurer denied plaintiff's disability benefits claim and upheld the decision on appeal. Id. at 388. While the internal appeal was pending, the insurer hired a doctor to examine the plaintiff, relied on the doctor's report in its decision on review, and, despite plaintiff's requests, did not provide plaintiff a copy of the doctor's report or allow plaintiff to respond to it. Id. The district court held that the insurer failed to provide plaintiff a full and fair review on appeal. Id. at 389.

Given the applicable regulatory text and history, the Court declines to depart from the reasoning of the circuit courts to have considered this issue. But even if the Court did so, and

13

instead adopted the reasoning of Hughes v. Hartford Life & Accident Ins. Co., plaintiff nevertheless does not reasonably claim he was deprived of a meaningful opportunity to respond to documentation or information developed on administrative appeal by Hartford Life which affected the outcome of the appeal.

And here, in accordance with ERISA's claim-procedure requirements, Hartford Life explained in its appeal decision letter dated November 9, 2017, that plaintiff is "entitled to receive upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to this claim" and may commence a civil action in a court of law if he disagreed with the determination. (AR 237).

Accordingly, pursuant to claim-requirement procedures applicable to plaintiff's claim, Hartford Life did not violate ERISA by failing to provide plaintiff any new or additional materials generated or considered on review prior to rendering a decision on appeal.

For this reason, and those above, the Court evaluates Hartford Life's determination of plaintiff's disability benefits claims under the deferential arbitrary and capricious standard.

II.     Applicable Standard of Review

Under the arbitrary and capricious standard, the Court may reverse Hartford Life's decision only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010). A decision concerning a claimant's disability benefits is not arbitrary or capricious merely because the record contains evidence supporting an alternative finding. See Pulvers

v. First Unum Life Ins. Co., 210 F.3d 89, 94 (2d Cir. 2000) (upholding denial of benefits despite "evidence in the record . . . that would have supported a contrary finding"), abrogated on other grounds by McCauley v. First Unum Life Ins. Co., 551 F.3d at 132–33.

This is "a highly deferential standard of review." Fuller v. J.P Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005). Indeed, it is "the least demanding form of judicial review of administrative action." Badawy v. First Reliance Standard Life Ins. Co., 581 F. Supp. 2d 594, 601 (S.D.N.Y. 2008).

III. Application

Having carefully reviewed the record, the Court concludes Hartford Life's decision respecting plaintiff's long-term disability benefits was neither arbitrary nor capricious.

First, although plaintiff contends Hartford Life should have considered RAI-Scarsdale to be plaintiff's Employer under the Plan, and thus should have accorded more weight to documents generated by RAI-Scarsdale (including plaintiff's corrected W-2s and a general ledger showing certain commissions paid to plaintiff by RAI-Scarsdale), the Court finds it was reasonable for Hartford Life to rely on documentation and information provided by RAI. Specifically, it was reasonable for Hartford Life to determine RAI was the Employer, Plan Administrator, and Policyholder under the Plan, and thus to rely on information provided by RAI concerning plaintiff's earnings. The administrative record demonstrates RAI-Scarsdale did not act as plaintiff's "Employer" for purposes of Plan administration, did not act as the "Policyholder" for purposes of administering the Plan, and neither calculated nor paid directly to Hartford Life premiums for plaintiff's coverage. To the contrary, the administrative record demonstrates RAI managed Plan enrollment, administrated the Plan, paid Plan premiums, and served as the Policyholder in all material respects. Indeed, RAI was responsible for paying Plan premiums based on the evidence of earnings in its possession for employees, including those of

15

affiliate entities, such as RAI-Scarsdale. For these reasons, it was reasonable for Hartford Life to rely on the W-2s and earnings information provided by RAI, rather than on information provided by plaintiff, to calculate plaintiff's gross monthly disability benefit.

Second, it was reasonable for Hartford Life to disregard plaintiff's SEP-IRA contributions for purposes of calculating plaintiff's Pre-Disability Earnings. As noted above, Hartford Life informed plaintiff such contributions were made toward a 408(k) plan, and thus not to any salary-reduction or other agreement within the Plan's definition of Monthly Rate of Basic Earnings.

Third, it was reasonable for Hartford Life to determine plaintiff's long-term disability benefit was fully taxable. Although plaintiff provided Hartford Life a letter from his accountant noting "the company" paid plaintiff's premiums (AR 943), RAI confirmed that it paid Hartford Life premiums for plaintiff's coverage under the Plan. Hartford Life noted that, even if RAI first paid plaintiff's premiums, and then reassigned those costs to RAI-Scarsdale, any dispute respecting whether plaintiff effectively paid his own premium would need to be resolved by plaintiff and RAI, not plaintiff and Hartford Life, "since employees do not have the option to pay premiums back to their Employer in order to make a non-contributory benefit a contributory benefit." (AR 237).

Fourth, although plaintiff contends it was arbitrary or capricious for Hartford Life to determine Booklet 4.5 governed plaintiff's coverage, the administrative record supports this determination. As noted above, Hartford Life first sent plaintiff a copy of Booklet 1.32, which applies to producers choosing to pay their own premium, but later produced to plaintiff Booklet 4.5, which covers producers who do not pay their premiums. The administrative record confirms RAI administered the Plan, including on behalf of plaintiff, and paid to Hartford Life the premiums associated with plaintiff's coverage. Therefore, it was reasonable for Hartford Life to

16

determine Booklet 4.5 governed plaintiff's claim, and that his gross benefit was taxable accordingly.

Finally, as an additional matter, plaintiff argues Hartford Life's adjudication of his claim was arbitrary and capricious due to Hartford Life's financial self-interest as both claim administrator and benefits payor, and because the benefits decision was marred by procedural and substantive defects.

Courts "may dial back deference if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest." Miles v. Principal Life Ins. Co., 720 F.3d 472, 485 (2d Cir.2013). A plan administrator that both evaluates and pays benefit claims has an inherent conflict of interest. McCauley v. First Unum Life Ins. Co., 551 F.3d at 133. Such conflict is "but one factor among many that a reviewing judge must take into account" in assessing whether a claim fiduciary's decision is arbitrary or capricious. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 116 (2008). Indeed, "[i]n the event of such a conflict of interest, 'a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion . . . and the significance of the factor will depend on the circumstances of the particular case.'" Correia v. Unum Life Ins. Co. of Am., 2016 WL 5462827, at *24 (S.D.N.Y. Sept. 29, 2016) (quoting Metro. Life Ins. Co. v. Glenn, 554 U.S. at 108).

Here, even assuming Hartford Life was operating under a conflict of interest, there is no credible evidence in the administrative record to suggest the conflict affected Hartford Life's decision or was otherwise outcome-determinative. Nor is there credible evidence Hartford Life has a history of biased claim adjudication. See Metro. Life Ins. Co. v. Glenn, 554 U.S. at 117. And although Hartford Life first denied plaintiff's long-term disability benefits claim outright, it also reversed itself following further review. Moreover, for the reasons set forth herein, the

17

administrative record does not support a finding that there were procedural or substantive defects concerning Hartford Life's claim adjudication to render arbitrary or capricious Hartford Life's decision respecting plaintiff's claim.

In sum, because Hartford Life's decision respecting plaintiff's long-term disability benefits is supported by substantial evidence, the decision is neither arbitrary nor capricious. Cf. Pagan v. NYNEX Pension Plan, 52 F.3d at 442 (noting a decision is arbitrary and capricious only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law").

## CONCLUSION

The Court finds and concludes defendants are entitled to judgment in their favor.

The Clerk is instructed to terminate plaintiff's motion for summary judgment. (Doc. #29).

The Clerk is further instructed to enter Judgment in defendants' favor dismissing plaintiff's complaint in its entirety, and close this case.

Dated: March 26, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge